The STATE of Texas

v.

**$11,014.00 and Willard Wilks.**

No. D–1289.

Supreme Court of Texas.

Oct. 23, 1991.

Rehearing Overruled Jan. 29, 1992.

Don J. Clemmer, John B. Holmes, Jr., Houston, for appellant.

Gerbert Gee, Houston, for appellee.

PER CURIAM.

This case presents the question whether the court of appeals erred in finding there was no evidence to support the trial court's judgment in a drug-related forfeiture case.

The State brought this action to obtain the forfeiture of $11,014 in U.S. currency recovered by a Houston police officer during a search of Willard Wayne Wilks. The

---

**1.** Because what was posted was insufficient, it is not necessary to reach the issue of where it was posted.

trial court found that Wilks had derived the money from the sale and/or distribution of a controlled substance. The court of appeals reversed, holding there was no evidence to support the judgment of the trial court. 808 S.W.2d 288. We reverse the judgment of the court of appeals and remand to the court of appeals for it to consider Wilks' other points of error.

■ Money is subject to forfeiture if it is derived from or intended for use in manufacturing, delivering, selling, or possessing a controlled substance. Tex.Rev.Civ.Stat. Ann. art. 4476–15 § 5.03(a)(6) *(repealed by* Act of June 14, 1989, 71st Leg., R.S., ch. 678, §§ 1, 13(1), 1989 Tex.Gen.Laws 3156; *codified in* Act of August 2, 1989, 71st Leg., C.S. ch. 12, § 1, 1989 Tex.Gen.Laws 14, 14; currently Tex.Crim.Proc.Code Ann. art. 59.01(2)(B)(i), 59.02(a).

■ In forfeiture proceedings, the state must show probable cause for seizing a person's property. Tex. Const. art. I, § 9. Probable cause in a forfeiture proceeding "is a reasonable belief that a 'substantial connection exists between the property to be forfeited and the criminal activity defined by the statute.'" *$56,700 in U.S. Currency v. State,* 730 S.W.2d 659 (Tex. 1987) *(quoting United States v. $364,-960.00 in U.S. Currency,* 661 F.2d 319, 323 (5th Cir.1981)).

■ In the present case, the court of appeals held there was no evidence of a substantial connection between the property to be forfeited and the criminal activity defined by the statute. 808 S.W.2d at 291. When considering a question of no evidence the court may only consider the evidence and inferences tending to support the finding and must disregard all evidence and inferences to the contrary. *$56,700,* 730 S.W.2d at 661; *Garza v. Alviar,* 395 S.W.2d 821, 823 (Tex.1965).

■ The following evidence supports the finding of the trial court. R.L. Slay, an officer with the Narcotics Division of the Houston Police Department, observed Wilks deplaning a Continental flight from New York City at Hobby Airport. Slay was a nineteen-year Houston Police Department veteran who had been assigned to the Airport Detail of the Narcotics Division for the previous eight years. Slay had received special training in the use of drug courier profiles which aided him in identifying potential drug smugglers. This procedure involved monitoring flights to and from known drug distribution centers and watching for any unusual or suspicious behavior consistent with drug trafficking.

Slay was observing the passengers deplaning from Wilks' Continental flight because this particular route was frequented by people transporting drugs or drug money between Houston and New York City. While watching for people who did not fit the normal flow of passengers, Slay saw Wilks step away from the other passengers and stand off to one side. Wilks began looking around the area in a suspicious manner. Wilks carried a single suitcase which appeared to be very light. This indicated to Slay that Wilks might be in Houston to pick up a controlled substance or that the suitcase contained money intended to be used to purchase a controlled substance.

Slay followed Wilks as he started toward the baggage area. Wilks appeared to be very nervous and continued to scan the area, looking back and forth. Slay then approached Wilks and asked if he could speak with him. Wilks agreed. Wilks stated that he had just arrived from New York City but that he no longer had his ticket. Slay noted that drug couriers commonly travelled under assumed names and would leave their tickets on the plane to conceal this fact. At trial, Wilks admitted that he was traveling under an assumed name. Wilks then told Slay that he was a Jamaican citizen and admitted that he did not have proper immigration papers. Wilks was then placed under arrest by an immigration officer.

Wilks was taken to the offices of the airport police where the immigration officer had Wilks empty his pockets in Slay's presence. Wilks produced from one of his pockets a large bundle of cash secured by a rubber band. He then stated that there was more money in the suitcase. Slay

opened the suitcase and found it to be empty except for three or four items of men's clothing and some bed sheets. Wrapped inside the sheets were two large bundles of cash also secured with rubber bands. Slay testified that it was typical for marihuana to be smuggled out of Houston wrapped in bed sheets. The money was then put back in the suitcase which was placed on the floor in the rear of the office.

Officer Doyle Green, a Houston Police Department Division dog handler, was then called to the scene. Green was a nineteen-year police veteran who had been assigned to the canine division for the last two and a half years. Green was trained in the use of narcotics detection dogs. Both Green and his dog were certified by the National Narcotic Detector Dog Association. When Green conducted a canine search in the airport police office the dog systematically searched the walls and furniture. When the dog approached the suitcase in the far back corner of the room the dog gave a strong, positive alert to the suitcase which indicated that it contained some type of narcotics odor. Green then took the dog out of the room while Slay removed the money from the suitcase and placed it in a cabinet. Upon searching the room a second time, the dog alerted on the cabinet which contained the money. Green testified that based on the dog's reaction, the money had been in recent close proximity to a controlled substance. Green also testified that the dog would not alert on the money absent an odor from a controlled substance.

Considering only the evidence that supports the trial court finding, the foregoing constitutes at least some evidence that the money was derived from the sale and/or distribution of a controlled substance. Any ultimate fact may be proved by circumstantial evidence. *Farley v. M.M. Cattle Co.*, 529 S.W.2d 751, 755 (Tex.1975). When considering a no evidence point, it was not the province of the court of appeals to second guess the fact finder unless only one inference could be drawn from the evidence. *Ross v. Green*, 135 Tex. 103, 139 S.W.2d 565, 572 (1940).

The circumstantial evidence relied upon by the trial court has sufficient probative force to constitute a basis for the legal inference that the currency was derived from the sale and/or distribution of a controlled substance. Therefore, we reverse the judgment of the court of appeals. We remand to the court of appeals so that court can consider Wilks' other points of error.