**Katherine T. HUNT, Appellant,**

v.

**Ernest W. HUNT, Jr., Appellee.**

**No. 11–96–117–CV.**

Court of Appeals of Texas,
Eastland.

Aug. 7, 1997.

Donald L. Sweatt, Donald L. Sweatt P.C., Graham, for appellant.

Chad Williams, Seymour, for appellee.

Before ARNOT, C.J., and DICKENSON and WRIGHT, JJ.

## OPINION

ARNOT, Chief Justice.

Katherine T. Hunt and Ernest W. Hunt, Jr. were married on December 26, 1992, and divorced on December 4, 1995. They had no children together. Katherine appeals, challenging several of the trial court's findings regarding property awarded to Ernest as separate property, regarding reimbursement of the community estate for funds expended to benefit Ernest's separate estate, and regarding offsets allowed against her claim for reimbursement. We affirm.

In her first six points of error, Katherine contends that the trial court erred in finding that various property belonged to Ernest as his separate property because Ernest failed to meet his burden of proof. Since it is not clear whether Katherine is challenging the legal or factual insufficiency, we will address both. In order to review a no evidence point, we must consider only the evidence and inferences that tend to support the finding, disregarding any evidence or inferences to the contrary. *State v. $11,014.00*, 820 S.W.2d 783 (Tex.1991). If there is any evidence of probative force to support the finding, the no evidence point must be overruled. *Juliette Fowler Homes, Inc. v. Welch Associates, Inc.*, 793 S.W.2d 660 (Tex.1990); *In re King's Estate*, 150 Tex. 662, 244 S.W.2d 660 (Tex. 1951). In order to review an insufficient evidence point, we must review all of the evidence and determine whether the finding is so contrary to the overwhelming weight of the evidence as to be clearly wrong and

unjust. *Cain v. Bain,* 709 S.W.2d 175 (Tex. 1986); *In re King's Estate, supra.*

■ All property possessed by a husband and wife during their marriage or at the time of dissolution of their marriage is presumed to be community property. TEX.FAM. CODE ANN. § 5.02 (Vernon 1993). However, all property owned or claimed by a spouse before marriage or acquired after marriage by gift, devise, or descent is the separate property of that spouse. TEX. CONST. art. XVI, § 15; TEX.FAM.CODE ANN. § 5.01 (Vernon 1993); *Eggemeyer v. Eggemeyer,* 554 S.W.2d 137, 140 (Tex.1977). A spouse asserting that certain property is his separate property bears the burden of rebutting the community property presumption by clear and convincing evidence. Section 5.02. To rebut the presumption, the spouse must generally trace and clearly identify property claimed as separate property. *McKinley v. McKinley,* 496 S.W.2d 540, 543 (Tex.1973); *Tarver v. Tarver,* 394 S.W.2d 780, 783 (Tex. 1965).

■ In the first point, Katherine complains of the trial court's finding that Ernest's interest in Hunt's Hashknife Helicopter, Inc. was his separate property and that the corporation was capitalized entirely with the helicopters. The record shows that the corporation was formed during the marriage on August 19, 1993. However, Ernest testified that the corporation owned two helicopters. Prior to the marriage and the formation of the corporation, these helicopters were owned by a partnership consisting of Ernest and his father. Upon his father's death, Ernest was awarded the helicopters and "created a corporation with the helicopters." The helicopters were Ernest's separate property. There is nothing in the record to indicate that community assets were used or that community debts were incurred in the formation of the corporation. When a corporation is funded with separate property, the corporation is separate property. *Allen v. Allen,* 704 S.W.2d 600 (Tex.App.—Fort Worth 1986, no writ). We hold that the trial court's finding is supported by sufficient evidence. The first point of error is overruled.

■ In the second point, Katherine contends that the trial court erred in finding that Ernest's interest in Hashknife Ranch, Inc. was his separate property. Ernest testified that he and his sister formed Hashknife Ranch prior to his marriage to Katherine. Pages from Ernest's ledgers, which were introduced by Katherine, show that Ernest received a salary from Hashknife Ranch prior to his marriage. Since Ernest acquired his interest in Hashknife Ranch prior to the marriage, it is his separate property. The second point of error is overruled.

■ In the third point, Katherine argues that the trial court erred in finding that the 1985 Chevrolet Windjammer motor home was Ernest's separate property. Ernest testified that he received $23,880.69 in life insurance proceeds upon his father's death and that he spent $13,658.72 of that money on a travel trailer/1985 Chevrolet motor . home. Ernest's ledger sheets indicate that he deposited insurance proceeds of $20,505.20 and $3,375.49 into his checking account in February and March of 1994 and that he issued checks for more than $13,000.00 in March 1994 for the Windjammer and its tags, license, and insurance. Prior to depositing the life insurance proceeds, Ernest had less than $6,000.00 in his checking account. We hold that the evidence is sufficient to show that the motor home was purchased with the separate property proceeds from Ernest's father's life insurance. The third point of error is overruled.

■ In her fourth point, Katherine contends that the trial court erred in finding that the lake cabin at Lake Kemp in Baylor County, Texas (described as Block 1, Section B, on East Moonshine) was Ernest's separate property. Ernest testified that he purchased a lake cabin at Lake Kemp prior to his marriage to Katherine. The divorce decree from Ernest's previous marriage awarded the lake cabin to Ernest as his separate property on October 2, 1990. Thus, the evidence shows that the lake cabin was owned by Ernest prior to his marriage to Katherine. The fourth point of error is overruled.

■ In the fifth point, Katherine argues that the trial court erred in finding that a

royalty interest in Young County was Ernest's separate property. Ernest testified that he owned an oil royalty and that he acquired it before he married Katherine. Ernest's father had given the oil royalty to Ernest. On rebuttal, Ernest testified regarding a document that was marked as an exhibit but was not offered into evidence. Ernest testified that the document "is where my father signed a royalty interest to myself." We hold that the evidence is sufficient to show that the royalty is Ernest's separate property, either because it was a gift from his father or because it was owned prior to marriage. The fifth point of error is overruled.

■ In the sixth point, Katherine contends that the trial court erred in finding that an individual retirement account at Modern Woodmen of America was Ernest's separate property. Ernest testified that he opened the account prior to his marriage. Petitioner's Exhibit No. 5, a document from Modern Woodmen of America, indicates that the account was opened on March 1, 1987. In December 1992, the balance in the account was over $16,000.00. The record shows that Ernest deposited $3,500.00 into the account during his marriage to Katherine and that the account accrued interest during that time. Retirement benefits that accrue during marriage are community property. *Cearley v. Cearley,* 544 S.W.2d 661 (Tex. 1976); *Hopf v. Hopf,* 841 S.W.2d 898 (Tex. App.—Houston [14th Dist.] 1992, no writ).

Although a portion of Ernest's retirement account accrued during marriage, we find no reversible error in the trial court's finding because the value of the property mischaracterized as separate property did not affect the trial court's just and right division of the community estate. *McElwee v. McElwee,* 911 S.W.2d 182 (Tex.App.—Houston [1st Dist.] 1995, writ den'd). We note also that the trial court found that Katherine's individual retirement account and her other investment accounts, which were opened prior to marriage but accrued interest during marriage, were Katherine's separate property. The trial court also awarded the community interest in Katherine's teacher's retirement account to Katherine. The sixth point of error is overruled.

■ In her next three points, Katherine contends that the trial court abused its discretion in failing to reimburse the community estate for various funds expended by Ernest during their marriage. Claims for reimbursement lie within the discretion of the trial court and are not available as a matter of law. *Vallone v. Vallone,* 644 S.W.2d 455 (Tex.1982). The equitable right of reimbursement arises when funds or assets of one estate are used to benefit another estate without receiving a benefit in return. *Vallone v. Vallone, supra* at 459. In determining such a claim, a trial court should consider "all the facts and circumstances and determine what is fair, just, and equitable." *Penick v. Penick,* 783 S.W.2d 194, 197 (Tex. 1988).

■ In the seventh point, Katherine argues that the trial court abused its discretion in refusing to reimburse the community estate for child support payments made by Ernest during his marriage to Katherine. The record shows that Ernest had a child from a previous marriage and that, as required by the divorce decree from that marriage, Ernest paid $700.00 a month in child support for the child. During his marriage to Katherine, Ernest spent $21,000.00 of community funds to make the child support payments. The record also shows that Katherine had a child from a previous marriage who lived with Ernest and Katherine during their marriage and that community funds were used to support Katherine's child. We find no abuse of discretion in the trial court's failure to reimburse the community estate for child support payments made to Ernest's child. *See Pelzig v. Berkebile,* 931 S.W.2d 398 (Tex.App.—Corpus Christi 1996, no writ); *Zieba v. Martin,* 928 S.W.2d 782 (Tex. App.—Houston [14th Dist.] 1996, no writ). The seventh point of error is overruled.

■ In her eighth point, Katherine contends that the trial court abused its discretion in failing to reimburse the community estate for community funds expended to make "contractual alimony payments" to Ernest's ex-wife. The divorce decree awarded

Ernest's ex-wife $17,000.00, payable in monthly installments of $472.23. The trial court found that, during his marriage to Katherine, Ernest paid $4,248.00 in "contractual alimony payments" to his ex-wife. We find no abuse of discretion in the trial court's refusal to reimburse the community estate for these court-ordered expenditures. *Pelzig v. Berkebile, supra; Zieba v. Martin, supra.* The eighth point of error is overruled.

 In her ninth point, Katherine argues that the trial court abused its discretion in failing to reimburse the community estate for community funds expended to pay ad valorem taxes on Ernest's separate property. The trial court found that $2,483.26 in community funds were spent during the marriage to pay taxes on Ernest's real property. The trial court did not abuse its discretion by failing to reimburse the community estate for such tax payments because it was free to find that the community received offsetting benefits from the rents, royalties, and tax benefits received from Ernest's separate property. *See Penick v. Penick, supra.* The record shows that the community received $600.00 per month from a lease on Ernest's real property. The ninth point of error is overruled.

In her next two points, Katherine contends that the trial court erred in finding that Ernest was entitled to an offset against the community estate's reimbursement claim. The trial court reimbursed the community estate in the amount of $47,765.73 for community funds and time spent on Ernest's separate estate. However, the trial court allowed an offset of $16,213.16 against the reimbursement for separate funds that Ernest had deposited into community bank accounts. In determining the community's equitable claim for reimbursement, the trial court was required to consider "all the facts and circumstances and determine what is fair, just, and equitable." *Penick v. Penick, supra; see also* TEX.FAM.CODE ANN. § 3.63 (Vernon 1993). We presume that the trial court properly exercised its discretion. *Vallone v. Vallone, supra.* Katherine has not shown a clear abuse of discretion. The tenth and eleventh points of error are overruled.

In her final point, Katherine argues that the trial court abused its discretion by failing to make a just and right division of the community estate due to the erroneous findings of fact characterizing items of community property as separate property. We addressed the arguments made by Katherine in this point of error in our discussions of the first six points of error. Therefore, we also overrule the twelfth point of error.

The judgment of the trial court is affirmed.