**ONE 1995 DODGE PICKUP, BEARING TEXAS LICENSE PLATE # 2NJ–TM, V.I.N., 1B7HC16Y9SS379939, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 10–02–135–CV.**

Court of Appeals of Texas, Waco.

July 30, 2003.

Jim Shaw, Ft. Worth, for appellant.

Dale S. Hanna, Johnson County District Attorney, David W. Vernon, Johnson County Asst. District Attorney, Cleburne, for appellee.

Before Chief Justice DAVIS, Justice VANCE, and Justice GRAY.

## OPINION

BILL VANCE, Justice.

This is an appeal from a forfeiture proceeding in which Robert Edward Anderson III's 1995 Dodge pickup truck was forfeited to the state. Anderson argues that the forfeiture was improper because there was no evidence that the truck was contraband. Because we find that the evidence supporting the judgment created no more than a mere surmise or suspicion of the truck's involvement in illegal activity, we agree that there is "no evidence." We will reverse the judgment.

## BACKGROUND

On June 18, 2001, police in Burleson, Texas were conducting surveillance on a house, based on an informant's tip. They smelled an odor of ether associated with the manufacture of methamphetamine coming from the house. Anderson's 1995 Dodge pickup was parked outside the house. Police obtained a warrant to search both the house and the truck. While searching the truck, officers found two funnels, multiple empty blister packs of over-the-counter ephedrine or pseudoephedrine,[1] and unspecified drug paraphernalia. Materials, substances, and equipment that could be used as a drug lab were found in the house, including additional funnels similar to those found in the truck. At trial, Officer Feucht, who obtained and executed the search warrant, testified that the materials and equipment found in the house and in the truck are commonly used in the manufacture of methamphetamine. No drugs or drug

paraphernalia were discovered on Anderson, who was found exiting the house and who was searched.

## FORFEITURE

Forfeiture proceedings are civil in nature. Tex.Code Crim. Proc. Ann. art. 59.05(b) (Vernon 2003). The state must prove by a preponderance of the evidence that the property is subject to forfeiture. *Id.* Only "contraband" is subject to forfeiture. *Id.* 59.02(a). Contraband includes property of any nature, including real, personal, tangible, or intangible, that is used or intended to be used in the commission of any felony under Chapter 481, Health and Safety Code (Texas Controlled Substances Act). *Id.* art. 59.01(2)(B)(i). Methamphetamine is a controlled substance that is classified in Penalty Group I of the Health and Safety Code, and it is a felony offense to manufacture, deliver, or possess with intent to deliver methamphetamine.[2] Tex. Health & Safety Code Ann. §§ 481.101(6), 481.112 (Vernon 1992 & Supp.2003).

In forfeiture proceedings, the state must show probable cause for seizing a person's property. Tex. Const. art. I, § 9; *State v. $11,014.00,* 820 S.W.2d 783, 784 (Tex.1991). To show probable cause the state must establish a reasonable belief that a substantial connection exists between the property to be forfeited and the criminal activity defined by the statute. *$11,014.00,* 820 S.W.2d at 784. This substantial connection may be proved by circumstantial evidence. *Id.* at 785. However, the circumstances must be proven by

1. For convenience, we will refer to "ephedrine or pseudoephedrine" simply as "ephedrine".

2. The offense is a state jail felony if the amount of the methamphetamine is, by aggregate weight, including adulterants or dilutants, less than one gram. Tex. Health &

Safety Code Ann. § 481.112(b) (Vernon 2003). The offense is a felony of the second degree if the amount of the methamphetamine is, by aggregate weight, including adulterants or dilutants, one gram or more but less than four grams. *Id.* § 481.112(c).

direct evidence. *Burlington–Rock Island R. Co. v. Pruitt,* 160 S.W.2d 105, 108 (Tex. Civ.App.-Waco 1942, writ ref'd).[3]

### STANDARD OF REVIEW

When considering a no-evidence question, we may consider only the evidence and inferences tending to support the judgment and must disregard all evidence and inferences to the contrary. *$11,014,* 820 S.W.2d at 784. If there is more than a scintilla of evidence to support the finding, the no-evidence challenge fails. *Browning–Ferris, Inc. v. Reyna,* 865 S.W.2d 925, 928 (Tex.1993). "To rise above a scintilla, the evidence offered to prove a vital fact must do more than create a mere surmise or suspicion of its existence." *Lozano v. Lozano,* 52 S.W.3d 141, 145 (Tex.2001). Meager circumstantial evidence from which equally plausible but opposite inferences may be drawn is speculative and legally insufficient to support a finding. *Wal–Mart Stores, Inc. v. Gonzalez,* 968 S.W.2d 934, 936 (Tex.1998).

### ANALYSIS

Vehicle forfeiture cases ordinarily involve evidence of a more direct connection to the alleged crime than the evidence presented in this case. *E.g., 1991 Nissan Pickup, License No. 1307YU, VIN No. 1N6SD11S6MC365674 v. State,* 896 S.W.2d 344 (Tex.App.-Eastland 1995, no writ) (truck used to transport heroin from Mexico was used in commission of offense); *Forty–Seven Thousand Two Hundred Dollars U.S. Currency ($47,200.00) v. State,* 883 S.W.2d 302 (Tex.App.-El Paso 1994, writ denied) (vehicles used to transport marijuana were used in commission of

a felony). In fact, there is no direct evidence that Anderson's truck was used in the manufacture, delivery, or possession of methamphetamine. Therefore, we must consider the proffered circumstantial evidence to determine if it creates more than a mere surmise or suspicion that Anderson's truck was used in connection with illegal activity. *Lozano,* 52 S.W.3d at 145.

According to Officer Feucht, Anderson was present at the house from which Feucht smelled ether, an odor associated with the manufacture of methamphetamine. Feucht testified that the search of the house produced materials and equipment that were being used or could be used to manufacture methamphetamine. Anderson's 1995 Dodge pickup, which was parked outside the house, was also searched. In it, Feucht found (1) multiple, empty blister-packs of ephedrine, a chemical precursor to methamphetamine, (2) unspecified "drug paraphernalia," and (3) two funnels, like the ones found in the house. He noted that both the funnels and ephedrine could be used in the manufacture of illegal drugs.

Officer Feucht: What I saw and what I observed being found there, there was some funnels on the front seat of the pickup and there were numerous empty blister packs of tablets containing either ephedrine or pseudoephedrine in them as well as some drug paraphernalia.

State's Attorney: Let me stop you right there. Would the funnels, would those be apparatus or equipment, based upon your training, knowledge and experi-

---

**3.** Parents sued railroad company for death of son hit by an oncoming train under the theory of "discovered peril." *Burlington–Rock Island R. Co.,* 160 S.W.2d at 106. The Waco Court of Appeals held that although discovered peril may be proven by circumstantial evidence, conflicting testimony as to how far the train was from the boy when it blew its whistle did not establish that the railroad employees: 1) discovered the peril in time to avert it, and 2) failed to use all means to do so. *Id.* at 108.

ence, would be used in the manufacture of illegal narcotics?

Officer Feucht: Yes, they would be.

. . .

State's Attorney: Is it your opinion based upon your training, knowledge and experience as a peace officer that the substances contained in those blister packets, that ephedrine and pseudoephedrine, would be used in the manufacture of illegal narcotics?

Officer Feucht: Yes, they are a chemical precursor.

Notably, Feucht did not testify that the "drug paraphernalia" was or could be used to manufacture illegal narcotics.

We note first that the record is silent as to *how* Anderson's *truck* was used in the manufacture of methamphetamine. And there is no evidence of when any item found in the truck was placed there, *i.e.* before the truck arrived at the house or after it was parked there. As to the ephedrine, Officer Feucht testified that he found multiple, *empty* blister packages of this over-the-counter decongestant. To infer that Anderson's truck was used to bring ephedrine to the house, would first require a presumption the ephedrine itself was once in the truck as well. But we cannot tell from the record if the ephedrine itself was ever in the truck, or if the packaging alone was discarded there. Similarly, there are many reasons, unrelated to manufacturing methamphetamine, why a driver might keep a funnel in his truck.

The trial judge reached a similar conclusion, before he rendered his verdict of forfeiture: "[O]f course, we all know whose truck it was because everybody admits that and I don't have any problem in finding by a preponderance of the evidence that there was some drug manufacturing going on at that house. Of course, the question is, is whether that truck was in-

volved in that. I'm not too concerned about the funnels because I don't even— there's not any evidence about what they were or how they could be used and I'm not too concerned about the empty, what, blister packs. . . ." The judge was, however, concerned about the "drug paraphernalia." He concluded: "But now I thought the Officer also testified that there was drug paraphernalia found in the truck in addition to those other two items and if I'm correct on that, I, of course, find that the truck was used in the manufacture of controlled substances and will forfeit it." "Drug paraphernalia" could mean materials used to manufacture drugs or materials employed to actually "use" the drugs, like pipes or needles. And both inferences about the meaning of the words are equally plausible.

We remain cognizant of our duty not to indulge inferences contrary to the judgment when conducting a legal sufficiency review. *$11,014,* 820 S.W.2d at 784. But the words "more than a scintilla" are not without meaning. We find the circumstantial evidence in this case to be meager, speculative, and legally insufficient. *Wal-Mart Stores,* 968 S.W.2d at 936. It does no more than create a mere surmise or suspicion that Anderson's pickup *may have been* used in the manufacture of methamphetamine. *Lozano,* 52 S.W.3d at 145. It is no more than a scintilla of evidence to support a finding that the 1995 Dodge pickup truck was contraband, and we, therefore, sustain Anderson's sole issue. *Id.; Browning–Ferris,* 865 S.W.2d at 928.

## CONCLUSION

Having sustained Anderson's only issue, we reverse the judgment and render judgment of non-forfeiture.

Justice GRAY dissenting.

**310**

TOM GRAY, Justice, dissenting.

The majority has misapplied the standard of review for a no evidence challenge. Because of this, the decision of the majority to reverse the judgment is in error, and I respectfully dissent.

This appeal is from a civil forfeiture proceeding under Chapter 59 of the Texas Code of Criminal Procedure. The subject of the forfeiture was a 1995 Dodge pickup. The property owner, Robert Anderson, III, contested the forfeiture. In response to the State's petition, Anderson contended that the State had no probable cause to seize the pickup and that the State did not prove that the pickup was contraband. At the hearing, probable cause was not contested as seriously as the allegation that the pickup was contraband and, thus, subject to forfeiture. The trial court ruled the pickup was contraband. The trial court did not rule on Anderson's probable cause contention. No findings of fact or conclusions of law were requested or filed.

Anderson's issue on appeal is that there is no evidence to support the trial court's ruling that the pickup was contraband. He does not contend on appeal that the State had no probable cause to seize the pickup in the first instance.

I disagree that the State provided no more than a scintilla of evidence to prove the pickup was contraband; *i.e.*, that it was used or intended to be used in the commission of any felony under the Texas Controlled Substances Act. TEX.CODE CRIM. PROC. ANN. art. 59.01(2)(B)(i) (Vernon Pamp.2003). The majority focuses its attention on the fact that the record "is silent as to *how* Anderson's *truck* was used

..." and that there was no testimony as to when any of the items found in the pickup were placed there. The majority also discounted, as did the trial court, the funnels and the "multiple" empty packages of pseudoephedrine. But that is not the standard of review.

Also, the majority cites case law about probable cause. I question the need for this section. The issue is a no-evidence question, not a probable cause question. It leads the reader to believe that the probable cause standard, a substantial connection between the property and the criminal activity [1], is incorporated into the no-evidence review of whether the property is contraband. While I realize that some courts have used it in this manner [2], probable cause is not necessarily a part of a no-evidence review. With the first statement in the majority's analysis being, "[v]ehicle forfeiture cases ordinarily involve evidence of a *more direct connection* to the alleged crime ..." leads me to believe that this is the underlying standard used by the majority in deciding the evidence was insufficient to establish that the pickup was contraband.

I also question the necessity of citing a standard for a circumstantial evidence review at this point. The statement, "circumstances must be proven by direct evidence" is awkward. What the *Burlington* case said was that no presumption can itself be based on a presumption. *Burlington–Rock Island R. Co. v. Pruitt*, 160 S.W.2d 105, 108 (Tex.Civ.App.-Waco 1942, writ ref'd). "Whenever circumstantial evidence is relied upon to prove a fact, the

---

1. *$56,700.00 in United States Currency v. State*, 730 S.W.2d 659, 661 (Tex.1987).

2. *See, e.g., 1996 Pontiac Four Door v. State*, No. 09–01–092–CV, 2001 WL 1692122, 2002 Tex.App. Lexis 180, *5–6 (Beaumont January 10, 2002, no pet.)(not designated for publica-

tion); *$217,590.00 in United States Currency v. State*, 54 S.W.3d 918, 926 (Tex.App.-Corpus Christi 2001, no pet.); *$7,058.84 v. State*, 30 S.W.3d 580, 586–87 (Tex.App.-Texarkana 2000, no pet.).

circumstances must be proved, and not themselves presumed." *Id.* Again, I am led to believe that the majority is really using the probable cause standard to review Anderson's issue.

Nevertheless, the majority says it remains cognizant of the duty not to indulge in inferences contrary to the judgment. But that is exactly what it is doing. We are supposed to disregard all evidence and inferences that do not support the judgment. We also do not look at only what the trial court considered sufficient evidence. Let's look at the evidence in the correct light.

David Feucht was trained in the investigation of the manufacture and sale of illegal drugs. The first time he went by Anderson's residence, at 12:20 a.m., he smelled an odor associated with manufacturing methamphetamine, particularly, ether. He walked by the residence two more times to determine from where the smell was coming. Feucht noticed both the odor of ether and another odor of methamphetamine production emanating from Anderson's residence.

Feucht then set up surveillance of the residence and noticed that a Ford pickup, which was parked in front of the residence, left the residence. The pickup was driven by Rene Anderson who was stopped and arrested for multiple traffic violations.[3] Rene spoke with Feucht and informed him that she and Anderson were getting a divorce. She also told Feucht that Anderson came to the residence at about 12:15 a.m. and said he was going to do some "stuff." Rene said Anderson went to the back porch. When she went to the back porch to speak with him, Anderson told her to leave. Rene also told Feucht that she smelled an odor while out on the porch which she knew to be associated with the manufacture of methamphetamine.

Feucht prepared an affidavit in support of a search and seizure warrant which was signed by a magistrate at 5:07 a.m. Feucht participated in the execution of the search warrant. Illegal narcotics were found at the residence. The Dodge pickup was also found at the residence. Anderson admitted that he owned the pickup. Feucht also participated in the search of the pickup. In it he located funnels, numerous or multiple empty "blister packs" of ephedrine or pseudoephedrine tablets, and drug paraphernalia. Feucht testified that the funnels would be equipment used in the manufacture of illegal drugs. He also testified that ephedrine or pseudoephedrine tablets were a chemical precursor to the manufacture of illegal drugs.

In the bed of the pickup, investigators found a receipt for two boxes of decongestant and two boxes of "triphed," a battery strip, and coffee filters. Other items seized elsewhere included: several baggies of a brownish or reddish powder weighing anywhere from 7.5 grams to 1.75 pounds, more coffee filters and a box of #2 paper funnels, three one gallon jugs of muriatic acid, foil, stir sticks, respirator, paper towels, glass jars, and a red funnel. Feucht testified that based on his knowledge and experience, all the items seized were related to the manufacture and possession of illegal drugs. He also testified that he believed the pickup was used or intended to be used in the commission of a drug offense under the Health and Safety Code.

Granted, the record could have been developed more, but considering the actual evidence and inferences tending to support the judgment, there is more than a scintilla of evidence to support the trial court's

---

**3.** This information about Rene and what she subsequently told Feucht was part of the search warrant affidavit which was admitted into evidence.

finding that the pickup was contraband and subject to forfeiture. We should be affirming the trial court's judgment; not reversing it.