NO. 07-06-0418-CR



IN THE COURT OF APPEALS



FOR THE SEVENTH DISTRICT OF TEXAS



AT AMARILLO



PANEL A



APRIL 16, 2008


______________________________



DWAYNE ELONDO KING, APPELLANT



V.



THE STATE OF TEXAS, APPELLEE


_________________________________



FROM THE 223RD DISTRICT COURT OF GRAY COUNTY;



NO. 6392; HONORABLE LEE WATERS, JUDGE


_______________________________




Before CAMPBELL and HANCOCK and PIRTLE, JJ.

OPINION


 Appellant Dwayne Elondo King appeals his conviction by jury of the offense of
money laundering and the court-assessed punishment consisting of ten years confinement,
probated for ten years, and a $10,000 fine. We will reverse the judgment of the trial court. 

Procedural and Factual Background

 Appellant was charged by indictment with transporting the proceeds of criminal
activity, namely, the sale of marijuana and/or controlled substances, of a value of $20,000
or more but less than $100,000. (1) Appellant plead not guilty and the matter proceeded to
jury trial. 

 At trial, the State presented the testimony of Trooper Jerome Ingle and Deputy
Julian Torres and a videotape from Ingle's patrol car. Evidence showed that Trooper Ingle
stopped appellant on Interstate Highway 40 in Gray County for speeding. The trooper
testified he asked appellant to sit in the patrol vehicle while he conducted a check on his
driver's license. (2) While they waited, Ingle asked appellant where he was headed. 
Appellant responded that he and his passenger, Sherman Roberts, were going to his
cousin's funeral in Phoenix. Ingle noticed that when he asked appellant when the funeral
was going to be held, he appeared nervous and hesitant, and he stuttered. Appellant
reacted the same way to the trooper's inquiries about his relationship with Roberts but
answered quickly without hesitation to unrelated questions. When Ingle spoke with
Roberts, he was initially reticent and calm, but as the conversation continued, he became
nervous and defensive, at one point even using his cell phone in an apparent effort to talk
with his lawyer. Roberts also told the trooper he and appellant were going to a family
member's funeral in Phoenix, but the two men's responses to his questions about the
funeral were inconsistent in some respects. 

 Trooper Ingle obtained consent to search the vehicle from Roberts, the owner of the
PT Cruiser appellant was driving. As he was requesting permission, Ingle noticed Roberts
twice looked over his shoulder at the rear of the vehicle. Ingle also obtained permission
from appellant to search and asked if he had any drugs, weapons, or currency. Initially,
appellant stated he had $2,000 on him. On further questioning, he admitted there was
$20,000 in the car. Through additional questions, Ingle deduced that appellant did not
know exactly how much money was in the car. Appellant told Ingle that he took the money
from the safe in the pet store he owned, intending to purchase exotic pets for the store. 
Roberts told the trooper appellant owned two "dog food businesses." 

 At Trooper Ingle's request, appellant showed the trooper several bundles of money,
wrapped in rubber bands, from inside appellant's pockets. The trooper informed appellant
that a canine was going to be called in and if the dog alerted, any money in the car would
be seized. When the dog arrived, he alerted to the right rear of the car and to a bag inside
the vehicle. The bag contained $30,000 in cash, packaged in two bundles wrapped in
rubber bands. At trial, the trooper testified that this manner of packaging was similar to
that he had seen in past money seizures and this amount was enough to buy a felony
amount of marijuana or other controlled substance.


 Deputy Torres, a certified canine handler, testified to the training he and his drug
dog Carlos received, to the free-air sniff Carlos performed around the vehicle and to the
dog's more directed sniff of one of the bags. Because he had not been designated an
expert witness, however, he was not allowed to testify about the meaning of Carlos's
apparent alerts to the car and the bag. He was not allowed, for instance, to testify whether
the dog's alerts showed the presence of narcotics on the money. (3) Both officers' testimony
included their narration of the events depicted on the videotape recording made with Ingle's
patrol car video camera and mobile microphone.

 Following presentation of the evidence, the jury found appellant guilty of the second
degree felony offense of money laundering. The trial court assessed punishment at ten
years confinement in the Institutional Division of the Texas Department of Criminal Justice,
probated for a term of ten years, and a fine in the amount of $10,000 to be paid over the
course of appellant's probation. This appeal followed.

Sufficiency of the Evidence

 By his fifth point of error, appellant contends the evidence was legally and factually
insufficient to support his conviction. We agree, finding the evidence legally insufficient.


 In conducting a legal sufficiency review, we must determine whether, after reviewing
the evidence in the light most favorable to the prosecution, any rational trier of fact could
have found the essential elements of the crime beyond a reasonable doubt. Jackson v.
Virginia, 443 U.S. 307, 318-19, 199 S.Ct. 2781, 61 L.Ed.2d 560 (1979); Hooper v. State,
214 S.W.3d 9, 13 (Tex.Crim.App. 2007); Fowler v. State, 65 S.W.3d 116, 118
(Tex.App.-Amarillo 2001, no pet.). If, based on all the evidence, a reasonably-minded jury
must necessarily entertain a reasonable doubt of the defendant's guilt, due process
requires that we reverse and order a judgment of acquittal. Swearingen v. State, 101
S.W.3d 89, 95 (Tex.Crim.App. 2003), citing Narvaiz v. State, 840 S.W.2d 415, 423
(Tex.Crim.App. 1992), cert. denied, 507 U.S. 975, 113 S.Ct. 1422, 122 L.Ed.2d 791 (1993). 
Circumstantial evidence is as probative as direct evidence in establishing the guilt of an
actor and the standard of review on appeal is the same for both direct and circumstantial
evidence cases. Guevara v. State, 152 S.W.3d 45, 49 (Tex.Crim.App. 2004); Kutzner v.
State, 994 S.W.2d 180, 184 (Tex.Crim.App. 1999).

 A legal sufficiency analysis requires an appellate court to consider all the evidence
admitted that will sustain the conviction, including improperly admitted evidence. (4) 
Hernandez v. State, 190 S.W.3d 856, 863-64 (Tex.Crim.App. 2006). As fact finder, the jury
is the exclusive judge of the credibility of witnesses and the weight to be afforded their
testimony. Id. A reviewing court must give deference to "the responsibility of the trier of
fact to fairly resolve conflicts in testimony, to weigh the evidence, and to draw reasonable
inferences from basic facts to ultimate facts." Hooper, 214 S.W.3d at 13, quoting Jackson,
443 U.S. at 318-19. Under the Jackson standard, we permit juries to draw multiple
reasonable inferences as long as each inference is supported by evidence presented at
trial. Hooper, 214 S.W.3d at 15. However, juries are not permitted to reach conclusions
based on mere speculation or factually unsupported inferences or presumptions. (5) Id. at
16. When we consider a contention that a jury's finding based on inferences is not
supported by legally sufficient evidence, our task is to determine whether the necessary
inferences are reasonable based on the combined and cumulative force of all the evidence
when viewed in the light most favorable to the verdict. Id. at 16-17.

 Consistent with the indictment, the court's charge authorized the jury to find
appellant guilty if it found beyond a reasonable doubt that, on or about the named date in
Gray County, Texas, he knowingly transported the proceeds of criminal activity, to wit: the
sale of marihuana and/or controlled substances, of the value of $20,000 or more but less
than $100,000. It is undisputed appellant was, at that time and place, knowingly
transporting cash of that value. The issue is the sufficiency of the evidence to prove
beyond a reasonable doubt the cash was the proceeds of the sale of a controlled
substance. 


 It is undisputed also that there is no direct evidence the cash found in the vehicle
constituted such proceeds. Both testifying officers acknowledged having no information
about the source of the cash or appellant's means of acquiring it. If we are to affirm the
jury's finding of that ultimate fact over appellant's legal sufficiency challenge, we must
agree with the State that the finding is supported by the cumulative force of the
circumstantial evidence and reasonable inferences from that evidence. After carefully
reviewing the evidence, we agree instead with appellant that the finding is supported by
no more than speculation. 

 We affirmed a conviction for money laundering against a legal sufficiency challenge
in Granado v. State, No. 07-05-0444-CR, 2006 WL 2466972 (Tex.App.-Amarillo Aug. 25,
2006) (mem. op., not designated for publication). Like this case, evidence there showed
a drug dog alerted on the vehicle in which the $6100 cash was found. Officers also
testified in that case, however, that the cash had a strong smell of marijuana. Evidence
of the defendant's extraneous offenses for possession of drug paraphernalia, and of a
police contact during which methamphetamine residue was found in the defendant's
vehicle, also was present. Granado, 2006 WL 2466972 at *1. The evidence presented in
Granado provided evidence of a nexus between the money and some criminal activity that
had previously taken place. See Deschenes v. State, __ S.W.3d __, No. 07-06-00420-CR,
2008 WL 1721545 (Tex.App.-Amarillo April 14, 2008) (not yet released for publication).

 

 Here, evidence connecting the cash with the sale of controlled substances included
the trooper's testimony that drug traffickers frequently travel I-40, that in his eight years as
a trooper he personally had seized over 5000 pounds of marijuana, fifty-two pounds of
cocaine and twenty-six pounds of "Ecstasy," in addition to approximately $1.6 million, and
that a trafficking pattern exists on I-40, such that "[p]redominantly the narcotics is traveling
from the West Coat to the East Coast and the money is traveling from the East Coast back
to the West Coast." He agreed with the District Attorney that "[s]o if somebody had picked
up narcotics on the West Coast, transported it back to the east and sold it, then they would
then take that money and transport the money back to the West Coast to pick up
more. . . ." The trooper testified also that the cash was packaged in bundles in a manner
similar to other cash he had seized. Evidence showed the cash was deposited promptly
after its seizure, without testing for drug residue. The record does not describe the
condition or the denominations of the currency. As noted, however, the trooper said the
cash was enough to buy a felony amount of marijuana or other controlled substance.

 While the evidence shows appellant was transporting cash westbound on I-40 under
the general circumstances described by Trooper Ingle as common to drug trafficking, the
identification of appellant's cash as drugs sales proceeds depends primarily on the
inferences that reasonably can be drawn from the drug dog's alert. As noted, the evidence
is that the dog alerted on the right rear area of the vehicle. When the hatch of the PT
Cruiser was opened, the dog jumped into the cargo area on top of two pieces of luggage. 
Trooper Ingle removed the two luggage pieces from the vehicle and set them on the
ground. Torres testified Carlos's reaction to one of the bags constituted an alert. (6) Ingle
opened the bag, revealing the two bundles of cash. 

 No testimony establishes that Carlos's alert means he detected the odor of a
controlled substance about the bag. (7) For purposes of our analysis, however, we will
assume the jury reasonably could infer that, because Carlos was trained to alert to drug
odors, and alerted, he detected the odor of a drug. (8) And, without examining the
reasonableness of it on this record, we will assume for purposes of our analysis that the
jury reasonably could infer that a drug odor actually was present, that is, that Carlos was
correct. (9) 


 To conclude from the evidence that the cash in the bag was proceeds of the sale
of a controlled substance, however, the jury would have been required to draw further
inferences, beginning with an inference that the odor Carlos detected emanated from the
cash. (10) No evidence supports such an inference. The video shows the bag contained
articles of clothing in addition to the two bundles of cash. On this record, the jury was
required to speculate whether Carlos detected a scent on the bag itself, the cash or
another of the bag's contents. Further speculation then was required to reach the ultimate
conclusion that the cash was "acquired or derived directly or indirectly from, produced
through, or realized through" the sale of illicit drugs.

 Unlike in Granado, nothing else connects appellant with the sale of marijuana or
another controlled substance. (11) Even when cumulated with the evidence of the route
appellant and Roberts were traveling, their reactions and responses to the trooper's
questions, appellant's reluctance to admit to his possession of a large amount of cash, and
the other circumstances the State finds incriminating, (12) we cannot agree that the drug dog's
alert allowed the jury reasonably to infer appellant's guilt of the charged offense beyond a
reasonable doubt. (13) The only direct evidence of the source of the cash appellant carried
was that it came from the safe at his business in Detroit. (14) The jury was free to disbelieve
that story, but it could not substitute a conclusion, unsupported by facts, that the cash
instead was derived from the sale of a controlled substance. (15) 

 We sustain appellant's fifth issue. Finding it dispositive of the appeal, we do not
address his remaining issues. Tex. R. App. P. 47.1. Because we have found the evidence
supporting the judgment of the trial court to be legally insufficient, we reverse the judgment
and render a judgment of acquittal. 

 

 James T. Campbell

 Justice 

Publish.
1. See Tex. Penal Code Ann. § 34.02(a)(1) (Vernon 2003). This provision states that
a person commits an offense if the person knowingly acquires or maintains an interest in,
receives, conceals, possesses, transfers, or transports the proceeds of criminal activity. 
"Criminal activity" means any offense, including any preparatory offense, that is classified
as a felony under the laws of Texas or the United States or punishable by confinement for
more than one year under the laws of another state. Tex. Penal Code Ann. § 34.01(1)
(Vernon 2003). 
2. As Trooper Ingle completed a warning for speeding, he received notification that
appellant's license was suspended. He issued appellant a citation for driving with an
invalid license.
3. The court also disallowed the State's efforts to elicit testimony from Torres that the
dog's alert indicated "there is a scent there, that it was in close proximity to the money and
how long the scent was there." 
4. Therefore, without expressing any opinion on appellant's contention in his first
issue that the court erred under Crawford v. Washington, 541 U.S. 36, 124 S.Ct. 1354, 158
L.Ed.2d 177 (2004), by allowing the trooper to testify to statements made by his co-defendant Roberts, we have considered those statements in our legal sufficiency review.
5. In Hooper, the Court of Criminal Appeals further distinguished inferences from
speculation, defining an inference as "a conclusion reached by considering other facts and
deducing a logical consequence from them" and speculation as "mere theorizing or
guessing about the possible meaning of facts and evidence presented." The court noted
that "[a] conclusion reached by speculation may not be completely unreasonable, but it is
not sufficiently based on facts or evidence to support a finding beyond a reasonable
doubt." Hooper, 214 S.W.3d at 16. 
6. Testimony and the video show the dog bit the bag and dragged it briefly. Deputy
Torres testified that Carlos was trained to show an alert by scratching at the object of the
alert, and had never before bitten to indicate an alert. When asked if the bite was an alert,
he said, "To me it was. This is the first time that he had ever actually bitten anything looking
for his toy." Torres explained that the dog's toy was a short piece of plastic pipe the canine
expected to be given as a reward. While Torres's testimony and the video do not inspire
great confidence, viewing the evidence in the light most favorable to the verdict, the jury
could have agreed the dog alerted on the bag. 
7. Cf., e.g., State v. $11,014.00, 820 S.W.2d 783, 785 (Tex. 1991) (in forfeiture case,
dog handler testified that based on dog's reaction, money had been in recent close
proximity to controlled substance).
8. Said another way, we will assume the jury reasonably could infer the dog alerted
to the bag in accordance with his training and not for some other reason. Cf., e.g.,
$11,014.00, 820 S.W.2d at 785 (handler testified dog would not alert on money absent an
odor from controlled substance).
9. Cf. Granado, 2006 WL 2466972 at *2 (drug dog alerted on trunk area of vehicle,
where cash was found, but two officers also testified cash had a strong smell of marijuana). 
10. The evidence presented at trial would not permit an inference as to whether the
odor emanated from one bill or many among the $30,000. 
11. See also Deschenes v. State, __ S.W.3d __, No. 07-06-00420-CR, 2008 WL
1721545 (Tex.App.-Amarillo April 14, 2008) (not yet released for publication) (surveying
case law in money laundering cases).
12. The State points, for example, to the "lived-in look" of the vehicle and the absence
of clothing appropriate for a funeral.
13. See Hooper, 214 S.W.3d at 15-16 (civil law prohibition of "inference-stacking"
does not apply to sufficiency analysis in criminal cases, but each inference drawn must find
support in evidence).
14. Appellant did not testify. His wife testified the couple owned, through a
corporation, two pet stores in Detroit, Michigan. The defense introduced a federal
corporate income tax return for a corporation doing business as Discount Pet Supplies.
15. Trooper Ingle's statement that the cash was enough to buy a felony amount of
marijuana or other controlled substance does not fill the evidentiary void. Even if the jury
could infer from the evidence that the cash was intended to be used to buy marijuana or
another controlled substance, that would not prove the cash was the proceeds of the sale
of a controlled substance, under the definition of proceeds in the money laundering statute. 
See Tex. Penal Code Ann. § 34.01(4) (Vernon 2005). Cf. Tex. Code Crim. Proc. Ann. arts.
59.01(2)(B)(i), 59.02(a) (Vernon 2006-2007) (defining contraband subject to forfeiture to
include property "used or intended to be used" in commission of certain felonies). 



on:widow-orphan;
tab-stops:center 3.25in'>                                                                             v.

 

                                                        THE
STATE OF TEXAS, 

 

                                                                                                                        Appellee

_______________________________

 

                         FROM
THE 121st DISTRICT COURT OF TERRY COUNTY;

 

                                     NO.
5866; HON. KELLY MOORE, PRESIDING

                                           _______________________________

                                                                              

                                                   ABATEMENT
AND REMAND

                                           _______________________________

 

Before QUINN, C.J., and CAMPBELL and PIRTLE, JJ.

Ramon Sanchez III, appellant, appeals
his conviction for unlawful possession of a firearm by a felon.  Appellant timely perfected his appeal. The
clerks record was filed on April 14, 2011, and the reporters record on April
20, 2011.  Appellants brief was due on
May 19, 2011.  On May 25, 2011, counsel
filed a request to extend the time to file the brief, which was granted to June
20, 2011.  The brief was not filed by
that date and on June 28, 2011, counsel filed a second extension request to
file the brief, which was granted to July 11, 2011, with the admonition that no
further extensions would be granted, and if the brief was not filed by that
date, the appeal would be abated.  Instead
of receiving appellants brief by the due date, the court received a third
extension request for an additional thirty days to file appellants brief.  

            Those
convicted of criminal acts are entitled to effective assistance of counsel on
appeal.  The failure of counsel to timely
prosecute an appeal falls short of rendering such assistance.  Consequently, we abate the appeal and remand
the cause to the 121st District Court of Terry County (trial court) for further
proceedings.  Upon remand, the trial
court shall immediately cause notice of a hearing to be given and, thereafter,
conduct a hearing to determine 1) whether appellant desires to prosecute this
appeal, 2) whether appellant is indigent and entitled to appointed counsel, and
3) whether appellants current attorney was appointed or retained.  The trial court is ordered to execute
pertinent findings of fact on these matters. 
Should it be found that appellant desires to pursue the appeal, is
indigent, and his current legal counsel was appointed, then the trial court is
ordered to remove appellants current legal counsel and appoint another to
zealously represent appellants interest on appeal.   The name, address, phone number, telefax number, and state bar number of the new attorney
must also be included in the court's findings of fact and conclusions of
law.  Should it be determined that
counsel was retained, then this appellate court will initiate appropriate
disciplinary measures against him to secure compliance with its orders and the
ethical and fiduciary duties due his client. 
Lastly, the trial court shall also cause to be developed 1) a
supplemental clerk's record containing the findings of fact and conclusions of
law and 2) a reporter's record transcribing the evidence and argument presented
at the aforementioned hearing.  The
foregoing supplemental clerk's and reporters records must be filed by the
trial court with the clerk of this court on or before August 19, 2011.  Should additional time be needed to perform
these tasks, the trial court may request same on or before August 19, 2011.

It is so ordered.

                                                                                                            Per
Curiam

Do not publish.