The STATE of Texas, Appellant,

v.

Larry Don MANRY, Jr., Appellee.

No. 06-00-00133-CR.

Court of Appeals of Texas, Texarkana.

Submitted Aug. 2, 2001.

Decided Aug. 23, 2001.

James S. Moss, Special Assistant County Attorney, Bonham, William Howard Harris, First Assistant District/County Attorney, Paris, for appellant.

Gerard Rosso, Sherman, for appellee.

Before CORNELIUS, C.J., GRANT and ROSS, JJ.

## OPINION

Opinion by Justice ROSS.

The State of Texas appeals the trial court's order granting Larry Manry, Jr.'s motion to suppress evidence. The State indicted Manry for manufacturing methamphetamine in an amount greater than four grams, but less than 200 grams. Manry sought the suppression of evidence seized at his home pursuant to a warrant.

At the suppression hearing, David Thompson, an agent for the Regional Drug Task Force, testified that he received information from a private citizen who told him of strong chemical odors emanating from Manry's house, heavy vehicle traffic to and from Manry's house, and people at Manry's house using batteries in the cars parked there as a power source. Thompson testified that he investigated and observed that the people at Manry's house acted suspiciously by putting the hoods of their cars down and going into the house as he drove by. He testified that he could smell ammonia and denatured alcohol, two chemicals commonly used in the manufacture of methamphetamine, while positioned at two different places on the private citizen's property. From his observations and those of the private citizen, Thompson prepared an affidavit and was able to obtain a search warrant.

On cross-examination, Thompson admitted that he failed to file a return and inventory of items seized at Manry's house as required by Articles 18.06(a) and 18.10 of the Texas Code of Criminal Procedure. See Tex.Code Crim. Proc. Ann. art. 18.06(a) (Vernon 1977); Tex.Code Crim. Proc. Ann. art. 18.10 (Vernon Supp.2001). Thompson also admitted that the property seized was removed from Fannin County to Lamar County without the magistrate's authoriza-tion required by Article 18.10. See Tex. Code Crim. Proc. Ann. art. 18.10.

Further, when confronted with his police report, Thompson stated that the affidavit attached to the warrant recited the wrong location for the house. The affidavit recited that the house to be searched was, "A white wood single family dwelling, located 1.2 miles north from State Highway 82 on County Road 1235, north of Savoy, Texas." Thompson testified from his report that the house was actually located on County Road 1325, about three miles north of Savoy off "the new highway." He also testified there is a County Road 1235 in Fannin County, but that road is "way down in Leonard [Texas]."

Thompson testified that Manry's house was one of two houses "at the end of that road." The other house was made of brick. The only other house "in the general area within sight" of Manry's house was "at the corner" and was also made of brick. The affidavit also gives descriptions and license plate numbers of three vehicles that were parked at Manry's home.

At a suppression hearing, the trial court is the exclusive trier of fact and judge of the credibility of the witnesses and the weight of their testimony. *Green v. State*, 934 S.W.2d 92, 98 (Tex.Crim.App. 1996). Therefore, an appellate court must view the record and draw all reasonable inferences therefrom in the light most favorable to the trial court's ruling. *Villarreal v. State*, 935 S.W.2d 134, 138 (Tex. Crim.App.1996). Further, the appellate court must sustain the trial court's ruling if it is reasonably supported by the record and is correct on any theory of law applicable to the case. *Id.; Romero v. State*, 800 S.W.2d 539, 543 (Tex.Crim.App.1990).

The general rule is that an appellate court should afford almost total deference to a trial court's determination of the

historical facts that the record supports, especially when the trial court's fact findings are based on an evaluation of credibility and demeanor. *Guzman v. State,* 955 S.W.2d 85, 89 (Tex.Crim.App.1997). We are also to afford such deference to a trial court's ruling on the "application of law to fact questions" if the resolution of those ultimate questions turns on an evaluation of credibility and demeanor. *Id.* Application of law to fact questions not turning on credibility and demeanor may be reviewed by appellate courts de novo. *Id.* Here, the facts are undisputed, so the proper standard of review is de novo.

■ The State first contends the trial court erred because the description of the property was legally sufficient to allow a proper search and, in any event, Thompson's personal knowledge could supplement the affidavit's descriptions. A search warrant is sufficient if it (1) runs in the name of "The State of Texas"; (2) identifies, as near as may be, that which is to be seized and names or describes, as near as may be, the person, place, or thing to be searched; (3) commands any peace officer of the proper county to search the person, place, or thing named; and (4) is dated and signed by a magistrate. TEX.CODE CRIM. PROC. ANN. art. 18.04 (Vernon 1977). It is well settled that when, as here, the affidavit is attached to the warrant, these documents should be considered together as defining the place to be searched, but the description in the affidavit controls over the language in the warrant itself. *Riojas v. State,* 530 S.W.2d 298, 303 (Tex. Crim.App.1975); *State v. Saldivar,* 798 S.W.2d 872, 873 (Tex.App.—Austin 1990), *pet. ref'd,* 812 S.W.2d 322 (Tex.Crim.App. 1991).

■ The warrant and affidavit must be sufficient to enable the executing officer to locate and distinguish the property from others in the community and to prevent the mistaken execution of the warrant against an innocent third party. *Etchieson v. State,* 574 S.W.2d 753, 759 (Tex. Crim.App.1978); *Bridges v. State,* 574 S.W.2d 560, 562 (Tex.Crim.App. [Panel Op.] 1978). However, technical discrepancies in the descriptive portions of a search warrant will not automatically void the warrant. *Bridges,* 574 S.W.2d at 562.

A court may take judicial notice of facts that are capable of accurate and ready determination whose accuracy cannot reasonably be questioned. TEX.R. EVID. 201(b)(2), (c). We have consulted two maps of Fannin County that show county roads, one from the Bonham Area Chamber of Commerce and the other, a partial map showing the county roads numbered in the 1200s and 1300s, from the Fannin County Clerk's Office. Neither map shows a County Road 1325. The map from the county clerk's office shows a County Road 1235 that extends north from Highway 82, north of Savoy. Thus, the description of the road in the affidavit was correct, and the warrant was sufficient to allow any reasonable executing officer to locate Manry's house and to prevent a mistaken execution of the warrant against an innocent third party.

But even without resorting to the maps, we conclude that the descriptions in the affidavit were sufficient. It is true Thompson testified from his report that the affidavit incorrectly recited that Manry's house is on County Road 1235. However, the affidavit also recited that his house is located 1.2 miles north from State Highway 82, north of Savoy, Texas. As Thompson's testimony portrays the situation, by following the directions in the affidavit, the executing officer could travel on State Highway 82, encounter County Road 1325, recognize that the affiant had transposed the "2" and the "3" in County Road 1325, and proceed 1.2 miles north on

County Road 1325 until reaching Manry's house.

There is little risk that the executing officer would confuse Manry's house with another house in the neighborhood, as Thompson testified Manry's house was the only wooden house within sight in the general area, and the affidavit described the vehicles parked at the house and provided their license numbers. There is also little risk that the executing officer would confuse County Road 1235 and County Road 1325, as Thompson testified that County Road 1235 is "way down in Leonard," while County Road 1325 is north of Savoy and extends north from State Highway 82.[1] Even assuming, for the sake of argument, that the County Road 1235 referred to by Thompson from his report also runs from State Highway 82 north of Savoy, there is no chance that police would have encountered another white wooden house with three vehicles matching the descriptions and the license plate numbers of the three vehicles described in the affidavit.

In *Guzman v. State*, 508 S.W.2d 375, 376 (Tex.Crim.App.1974), the warrant described the property as "a one-story white frame building situated in the City of Houston, Harris County, Texas, located at 7307 Avenue L." On arriving, the officers observed that the lot contained two houses surrounded by a single fence. *Id.* One house was a small, one-room frame building, and the other was a white frame multi-room house, somewhat larger than the first. *Id.* The officers searched the second house, the address of which was actually 7309 Avenue L. *Id.* Nevertheless, the Texas Court of Criminal Appeals held that the house the officers searched conformed in all respects to the description in the warrant, while the other house did not match any of the physical characteristics of the house actually searched. *Id.* at 376–77.

*Johnson v. State*, 469 S.W.2d 581, 586 (Tex.Crim.App.1971), is distinguishable from the facts of the present case. In *Johnson*, the warrant designated the premises to be searched as 872 Bettina Street in Houston, but the premises searched were located at 872 Bettina Court. *Id.* The Texas Court of Criminal Appeals held that because there was no showing there were two streets named Bettina in Houston, the warrant was sufficient.

■ Here there was testimony that there is both a County Road 1235 and a County Road 1325 in Fannin County. However, there were added descriptors in the affidavit that directed the executing officer away from County Road 1235, which according to Thompson was "way down in Leonard," and toward County Road 1325, which according to Thompson was in Savoy and extended north from State Highway 82. Further, the affidavit in the present case described the house to be searched and the vehicles parked there. Consequently, the descriptive averments in the affidavit are sufficient to allow any reasonable officer to execute the warrant. We therefore need not determine whether Thompson's personal knowledge could supplement the affidavit.

■ The State next contends the seized property is admissible in evidence even though Thompson removed it from Fannin County to Lamar County. Article 18.10 of the Code of Criminal Procedure provides, in part:

The property may not be removed from the county in which it was seized without an order approving the removal, issued by a magistrate in the county in which the warrant was issued; provided, however, nothing herein shall prevent the

---

1. The map from the Bonham Area Chamber of Commerce shows that Leonard is south of Highway 82 and is in the southwest corner of Fannin County.

officer, or his department, from forwarding any item or items seized to a laboratory for scientific analysis.

TEX.CODE CRIM. PROC. ANN. art. 18.10. Further, Article 38.23(a) of the Code of Criminal Procedure provides:

No evidence obtained by an officer or other person in violation of any provisions of the Constitution or laws of the State of Texas, or of the Constitution or laws of the United States of America, shall be admitted in evidence against the accused on the trial of any criminal case.

TEX.CODE CRIM. PROC. ANN. art. 38.23(a) (Vernon Supp.2001).

▇ In *Martinez v. State*, 17 S.W.3d 677, 686 (Tex.Crim.App.2000), the Texas Court of Criminal Appeals held that Article 38.23(a)'s requirements do not apply to violations of Article 18.10 because Article 18.10 applies only *after* the evidence has been obtained or seized. Thus, the unauthorized removal of evidence from a county does not "vitiate the status of that evidence as legally obtained." *Id.*

It follows that the property seized from Manry's home was not subject to suppression on this basis, at least in the absence of a showing of prejudice. *See Roberts v. State*, 963 S.W.2d 894, 903 (Tex.App.— Texarkana 1998, no pet.) ("[M]inisterial violations of the search warrant statutes do not vitiate the search warrant in the absence of a showing of prejudice."). Manry has not offered any actual prejudice flowing from the removal of the property to Lamar County. Thus, the evidence could not have been suppressed on that basis.

▇ The State contends finally that Thompson's failure to file a return and inventory with the magistrate does not render the evidence inadmissible. Article 18.10 provides, in part:

Upon returning the search warrant, the officer shall state on the back of the same, or on some paper attached to it, the manner in which it has been executed and shall likewise deliver to the magistrate a copy of the inventory of the property taken into his possession under the warrant.

TEX.CODE CRIM. PROC. ANN. art. 18.10. In *Roberts*, this Court held that the failure to leave a copy of the inventory at the scene or to file it with the magistrate did not make the evidence inadmissible absent a showing of prejudice. *Roberts*, 963 S.W.2d at 903–04. Manry seeks to distinguish *Roberts* on the basis that the violations here are more serious. However, in both *Roberts* and the present case, the officer completely failed to make an inventory of all the property seized. *Id.* at 903.

The broader holding of *Roberts* is that ministerial violations of the warrant statutes will not vitiate the search warrant in the absence of a showing of prejudice. *Id.* at 904. In *Roberts*, we cited *Pecina v. State*, 516 S.W.2d 401, 404 (Tex.Crim.App. 1974),[2] as illustrating this principle in the context of the failure to file a return of the warrant with the magistrate. Thus, *Roberts* is controlling authority for this case.

Manry has failed to demonstrate prejudice flowing from Thompson's failure to file a return and inventory. Thus, the evidence could not properly be suppressed on that basis. There being no proper basis on which to suppress the evidence, the judgment of the trial court is reversed, and the case is remanded to that court for trial.

---

**2.** *Pecina* was impliedly overruled by *Madden v. State*, 644 S.W.2d 735, 738 (Tex.Crim.App. 1983), on grounds other than those referred to in this opinion.