**REAL PROPERTY LOCATED AT 4125 BLANTON, WICHITA FALLS, WICHITA COUNTY, TEXAS, WITH A LEGAL DESCRIPTION OF LOT 1 BLOCK 4 UNIVERSITY PARK B1, WICHITA COUNTY, TEXAS, Appellant**

v.

**The STATE of Texas, Appellee.**

No. 2–06–389–CV.

Court of Appeals of Texas, Fort Worth.

July 12, 2007.

478

Holly Crampton, Wichita Falls, for Appellant.

Barry L. Macha, Criminal Dist. Atty., Bryce Perry, G.A. "Tony" Fidele, Asst. Crim. Dist. Attys., Wichita, for State.

PANEL B: LIVINGSTON, WALKER, and McCOY, JJ.

## OPINION

TERRIE LIVINGSTON, Justice.

### I. Introduction

Appellant Terry Lee Terrell appeals the seizure of his real property pursuant to chapter 59 of the Texas Code of Criminal Procedure. TEX.CODE CRIM. PROC. ANN. arts. 59.01–.14 (Vernon 2006). In fifteen issues, appellant challenges the validity and constitutionality of the seizure and the legal and factual sufficiency of the evidence supporting the conclusion that the seizure was proper. We affirm.

### II. Background Facts

On February 8, 2006, acting on information received from a confidential informant, officers from the North Texas Regional Drug Enforcement Task Force sought, received, and executed a search and arrest warrant on appellant at 4125 Blanton, in Wichita Falls, Texas, the property which is the subject of this case

("Blanton Property"). During their search, the officers found appellant inside the residence and conducted field tests for drugs on a bag with filters, a white bucket containing a brown liquid, and a clear container with blue liquid. After receiving positive results for methamphetamine, the officers arrested appellant and seized equipment commonly used for producing drugs, containers holding the methamphetamine, and other drug paraphernalia. Appellant was charged with manufacturing an illegal substance in a drug free zone.[1]

Following the search, the State filed an Original Notice of Seizure and Intended Forfeiture and a Notice of Lis Pendens in the 89th District Court of Wichita County against the Blanton Property on February 10, 2006, asserting that the property met the definition of "contraband," that appellant was the owner, and that the property should be forfeited to the State of Texas under article 59.06 of the code of criminal procedure. TEX.CODE CRIM. PROC. ANN. art. 59.06. Subsequently, the trial court issued a "seizure warrant" for the Blanton Property.

After a bench trial, the trial court concluded that the Blanton Property was contraband and ordered that all of appellant's interest in it be forfeited to the State of Texas. This appeal followed.

### III. Validity of the Warrant

In his first issue, appellant asserts that the warrant authorizing the seizure of the Blanton Property was defective because it was entitled "seizure warrant" instead of "search and seizure" warrant.

### A. Applicable Law

◼ Property subject to forfeiture under chapter 59 of the Texas Code of Crimi-

nal Procedure may be seized under the authority of a "search warrant." *Id.* art. 59.03(a); *State v. Thirty Thousand Six Hundred Sixty Dollars,* 136 S.W.3d 392, 397 (Tex.App.-Corpus Christi 2004, pet. denied). A "search warrant" in Texas is defined as a "written order, issued by a magistrate and directed to a peace officer, commanding him to search for any property or thing and to seize the same." TEX. CODE CRIM. PROC. ANN. art. 18.01(a) (Vernon 2005); *Mulder v. State,* 707 S.W.2d 908, 915 (Tex.Crim.App.1986). Specifically, the four general requirements for a valid search warrant are as follows:

(1) that it run in the name of "The State of Texas";

(2) that it identify, as near as may be that which is to be seized and name or describe, as near as may be, the person, place, or thing to be searched;

(3) that it command any peace officer of the proper county to search forthwith the person, place, or thing named; and

(4) that it be dated and signed by the magistrate

TEX.CODE CRIM. PROC. ANN. art. 18.04; *State v. Manry,* 56 S.W.3d 806, 809 (Tex.App.-Texarkana 2001, no pet.). Further, the substantive requirements for a search warrant are as follows:

A search warrant may not be issued ... unless the sworn affidavit required by Subsection (b) of this article sets forth sufficient facts to establish probable cause that a specific felony offense has been committed and that the specifically described property or items that are to be searched for or seized constitute contraband as defined in Article 59.01 of this code and are located at or on the particular person, place, or thing to be searched.

TEX. HEALTH & SAFETY CODE ANN. § 481.134(b)(1) (Vernon Supp.2006).

---

1. The property is located within one thousand feet of Cunningham Elementary School. *See*

TEX.CODE CRIM. PROC. ANN. art. 18.01(g); *see Tolentino v. State,* 638 S.W.2d 499, 501 (Tex.Crim.App.1982); *$18,800 in U.S. Currency v. State,* 961 S.W.2d 257, 260 (Tex. App.-Houston [1st Dist.] 1997, no writ). Thus, a search warrant may be issued to search for *and seize* "contraband subject to forfeiture under chapter 59" of the code of criminal procedure. TEX.CODE CRIM. PROC. ANN. art. 18.02(12); *Wall v. State,* 878 S.W.2d 686, 688 (Tex.App.-Corpus Christi 1994, pet. ref'd); *see Winkles v. State,* 634 S.W.2d 289, 291 (Tex.Crim.App. [Panel Op.] 1981). Real property that has been used in the commission of a felony in violation of chapter 481 of the Health and Safety Code, the Texas Controlled Substance Act, is contraband subject to forfeiture. TEX.CODE CRIM. PROC. ANN. art. 59.01(2)(B)(i); TEX. HEALTH & SAFETY CODE ANN. ch. 481 (Vernon 2003 & Supp.2006); *One 1995 Dodge Pickup v. State,* 119 S.W.3d 306, 307 (Tex.App.-Waco 2003, no pet.). Methamphetamine is a controlled substance, and possession of it is a felony. TEX. HEALTH & SAFETY CODE ANN. §§ 481.102(6), 481.115; *One 1995 Dodge Pickup,* 119 S.W.3d at 307.

## B. Analysis

Appellant contends that the warrant issued to seize the Blanton Property, entitled "seizure warrant," was not sufficient to satisfy the criteria described above. Specifically, he asserts that because the words "seizure warrant" do not appear in Texas case law in isolation from "search and seizure warrant," the warrant here was invalid. We disagree.

■ First, the warrant meets the general requirements of a warrant under article 18.04. The warrant itself identifies the property to be seized, and the affidavit, which was incorporated into the warrant, also sufficiently identifies the Blanton Property. The warrant is dated and signed by a magistrate and runs in the name of "The State of Texas." The warrant specifically orders the police officers to seize the real property located at 4125 Blanton, Wichita Falls, Texas, within three days of the warrant's issuance. Thus, the four general requirements of a warrant were satisfied. *See* TEX.CODE CRIM. PROC. ANN. art. 18.04; *Manry,* 56 S.W.3d at 809.

■ The warrant and accompanying affidavit also meet the substantive requirements for seizure of contraband. The affidavit accompanying the warrant specifically described the results of the search that occurred two days earlier. The affidavit also included descriptions of the amount and type of drug paraphernalia discovered in the search and the conclusion of the police officers that the real property was being used as contraband. Thus, the affidavit contained sufficient facts to establish probable cause that a specific offense had been committed and that the described property constituted contraband. See TEX.CODE CRIM. PROC. ANN. art. 18.01(g); *$18,800 in U.S. Currency,* 961 S.W.2d at 260.

■ Appellant argues that the seizure warrant is defective because its title, "seizure warrant," is not recognized under article 59.03.[2] While the term "search" was not included in the title of the warrant, the substance of the warrant indicates that it was issued properly. *See Green v. State,*

2. The original search and arrest warrant established the proof necessary to issue the subsequent seizure warrant for the seizure of the real property in compliance with article 59.03. *See State v. Anderson,* 917 S.W.2d 92, 99–100 (Tex.App.-Houston [14th Dist.] 1996, pet. ref'd) (holding that personal knowledge gained by a police officer from a previous search may establish probable cause necessary for second search warrant if affidavit sets forth sufficient underlying facts).

799 S.W.2d 756, 757 (Tex.Crim.App.1990) (stating that the two objectives of the law concerning search warrants are to ensure that there is adequate probable cause to search and to prevent a mistake in the execution of the warrant against an innocent third party). Moreover, we generally are to look to the substance of a warrant to determine its purpose as opposed to its title. *Manry*, 56 S.W.3d at 809.

In this case, the substantive components of the warrant were in compliance with the statutory requirements, and any technical discrepancy in the title should not cause it to be deemed defective. *See id.* (stating that technical discrepancies are reviewed with a judicious eye for the procedural aspects surrounding issuance and execution of the warrant); *State v. Tipton*, 941 S.W.2d 152, 155 (Tex.App.-Corpus Christi 1996, pet. ref'd) (stating that ministerial violations of the search warrant statutes do not vitiate a search warrant in the absence of a showing of prejudice). Accordingly, we overrule appellant's first issue.

### IV. Whether a Seizure Occurred

In his second issue, appellant asserts that no seizure occurred because he was permitted to occupy the property for over three days after the seizure in violation of article 59.03 of the code of criminal procedure.

Article 59.03(c) governs the custody status and proper procedures regarding seized property. TEX.CODE CRIM. PROC. ANN. art. 59.03(c). Specifically, article 59.03(c) provides,

A peace officer who seizes property under this chapter has custody of the property, subject only to replevy under Article 59.02 of this code *or an order of a court.* ... Not later that 72 hours after the seizure, the peace officer shall:

(1) place the property under seal;

(2) remove the property to a place ordered by the court; or

(3) require a law enforcement agency of the state or a political subdivision to take custody of the property and move it to a proper location.

*Id.* (emphasis added); *State v. Silver Chevrolet Pickup*, 140 S.W.3d 691, 694 (Tex. 2004).

■ In summary, even if an officer seizes property, a court may order the property to be returned to the custody of a party. *See* TEX.CODE CRIM. PROC. ANN. art. 59.03(c); *One Hundred Ninety–One Thousand Four Hundred Fifty–Two Dollars v. State*, 827 S.W.2d 430, 432 (Tex.App.-Corpus Christi 1992, writ denied). When a court issues such an order, there is nothing within the statute indicating that the validity of the seizure is affected. Appellant has also not cited any contrary authority. The legislature cannot have intended for an order altering the custody of the property to affect the validity of a seizure under article 59.03(c) because the same article specifically allows for such an order. TEX.CODE CRIM. PROC. ANN. art. 59.03; *see id.* art. 59.01(8) (defining "seizure" as the restraint of property by force or by a display of the officer's authority, and includes taking possession of property); *Silver Chevrolet Pickup*, 140 S.W.3d at 694 (stating that seizure means the restraint of property by a peace officer under article 59.03 whether the officer restrains the property by physical force or by a display of the officer's authority); *In re K.L.V.*, 109 S.W.3d 61, 65–66 (Tex.App.-Fort Worth 2003, pet. denied) (stating that statutes will not be interpreted in a manner that leads to an absurd result when another alternative is available and the cardinal rule of statutory construction requires that each sentence, clause, phrase,

and word be given effect if reasonably possible).

■ In this case, the "seizure warrant" that authorized the seizure of the property specifically provided that the peace officer was "further **ORDERED** to allow only the owner of said property TERRY LEE TERRELL to remain and to occupy the premises aforementioned in this warrant." Such a warrant is proper. *See* TEX.CODE CRIM. PROC. ANN. art. 59.03(c); *One Hundred Ninety–One Thousand Four Hundred Fifty–Two Dollars*, 827 S.W.2d at 432. Accordingly, we overrule appellant's second issue.

## V. Appellant's Constitutional Challenges

■ In his third and fourth issues, appellant contends that because the warrant and subsequent seizure were invalid, the seizure violated his due process rights under the Fifth and Fourteenth Amendments of the United States Constitution and under article I, section 19 of the Texas Constitution. Because we have concluded that the warrant was valid despite its title and that the proper procedures were followed in executing the seizure, appellant's due process rights under federal and state law were not violated. *See Ramos v. State*, 934 S.W.2d 358, 362–63 (Tex.Crim.App. 1996) (holding that evidence obtained from valid search warrant did not violate constitutional due process provisions), *cert. denied*, 520 U.S. 1198, 117 S.Ct. 1556, 137 L.Ed.2d 704 (1997); *Phenix v. State*, 488 S.W.2d 759, 767 (Tex.Crim.App.1973) (stating that seizure conducted within parameters of a valid search warrant did not

violate defendant's constitutional rights where officers acted in accordance with procedural guidelines). Accordingly, we overrule appellant's third and fourth issues.

■ In his fifth and sixth issues, appellant contends that the method of seizure violated the constitutional provisions prohibiting ex post facto laws found in article I, section 10, clause 1 of the U.S. Constitution and article I, section 16 of the Texas Constitution.[3] Ex post facto prohibitions apply to civil statutes only when the statutory scheme is so punitive either in purpose or effect as to transform what was clearly intended as a civil remedy into a criminal penalty. *See Rodriguez*, 93 S.W.3d at 67 (holding that the legislature's manifest intent will be rejected only where the party challenging the statute provides the clearest proof that the statute is actually criminally punitive in operation).

■ Forfeitures under chapter 59 of the code of criminal procedure are civil, in rem proceedings against property rather than against the defendant and are not normally classified as punishment. *See* TEX.CODE CRIM. PROC. ANN. art. 59.05(e); *Fant v. State*, 931 S.W.2d 299, 307 (Tex. Crim.App.1996); *Thirty Thousand Six Hundred Dollars*, 136 S.W.3d at 413 (stating that the forfeiture provisions of chapter 59 are remedial, not punitive). Thus, the ex post facto clauses of the federal and state constitutions are inapplicable here. *See Fant*, 931 S.W.2d at 307. Accordingly, we overrule appellant's fifth and sixth issues.

---

**3.** An ex post facto law (1) punishes as a crime an act previously committed which was innocent when done, (2) changes the punishment and inflicts a greater punishment than the law attached to a criminal offense when committed, or (3) deprives a person charged with a crime of any defense available at the time the act was committed. *Collins v. Youngblood*, 497 U.S. 37, 42–44, 110 S.Ct. 2715, 2719–20, 111 L.Ed.2d 30 (1990); *Ex parte Davis*, 947 S.W.2d 216, 219–20 (Tex.Crim.App.1996); *Rodriguez v. State*, 93 S.W.3d 60, 66–67 (Tex. Crim.App.2002).

In his seventh through eleventh issues, appellant asserts that the forfeiture of the property violates the Excessive Fines Clause of the Eighth Amendment and article I, section 13 of the Texas Constitution, that article I, section 21 of the Texas Constitution entitles appellant to strict construction and strict compliance with chapter 59 of the code of criminal procedure, and that an incorrect burden of proof was applied to the forfeiture proceedings in violation of the Due Process Clause of the Fourteenth Amendment of the U.S. Constitution and article I, section 19 of the Texas Constitution.

■ The State asserts that appellant waived these constitutional challenges by failing to present them to the trial court. We agree. To preserve a complaint for our review, a party must have presented to the trial court a timely request, objection, or motion that states the specific grounds for the desired ruling, if they are not apparent from the context of the request, objection, or motion. TEX.R.APP. P. 33.1(a); *see also* TEX.R. EVID. 103(a)(1). If a party fails to do this, error is not preserved, and the complaint is waived. *Bushell v. Dean*, 803 S.W.2d 711, 712 (Tex. 1991) (op. on reh'g).

■ Appellant never presented issues eight, ten, or eleven to the trial court or asserted them in his motion for new trial. He asserted issues seven and nine for the first time in his motion for new trial; these issues were untimely presented. Therefore, he waived these constitutional issues. *See Dreyer v. Greene*, 871 S.W.2d 697, 698 (Tex.1993) (holding that a claim, including a constitutional claim, must have been asserted to the trial court to be raised on appeal); *Pirtle v. Gregory*, 629 S.W.2d 919, 920 (Tex.1982) (stating fundamental error in civil trials survives today in those rare

instances in which the record shows the court lacked jurisdiction or that the public interest is directly and adversely affected); *Loera v. Interstate Inv. Corp.*, 93 S.W.3d 224, 228 (Tex.App.-Houston [14th Dist] 2002, pet. denied) (holding that claims raised by appellant for first time in motion for new trial were untimely and therefore waived). Accordingly, we overrule appellant's seventh through eleventh issues.

## VI. Testing of Methamphetamine

In his twelfth issue, appellant contends that the proof of methamphetamine under the health and safety code cannot be made by field tests alone, and, therefore, the evidence was insufficient to establish the identity of an illegal substance. However, field tests have been used to meet the minimum burden of proof as evidence of the presence of illegal drugs. *See Gabriel v. State*, 900 S.W.2d 721, 722 (Tex.Crim. App.1995); *Smith v. State*, 874 S.W.2d 720, 722 (Tex.App.-Houston [1st Dist] ), *pet. ref'd*, 887 S.W.2d 948 (Tex.Crim.App.1994). Therefore, we overrule appellant's twelfth point.[4]

## VII. Sufficiency of the Evidence

In his thirteenth through fifteenth issues, appellant argues that the evidence is legally and factually insufficient to support the forfeiture judgment. Specifically, appellant contends that there was insufficient evidence to establish that the property was contraband and that the subsequent seizure was valid.

### A. Standards of Review

■ A legal sufficiency challenge may only be sustained when: (1) the record discloses a complete absence of evidence of a vital fact; (2) the court is barred by rules of law or of evidence from

---

4. We address the sufficiency argument on the field test in the next section.

giving weight to the only evidence offered to prove a vital fact; (3) the evidence offered to prove a vital fact is no more than a mere scintilla; or (4) the evidence establishes conclusively the opposite of a vital fact. *Uniroyal Goodrich Tire Co. v. Martinez*, 977 S.W.2d 328, 334 (Tex.1998), *cert. denied*, 526 U.S. 1040, 119 S.Ct. 1336, 143 L.Ed.2d 500 (1999); Robert W. Calvert, *"No Evidence" and "Insufficient Evidence" Points of Error*, 38 TEX. L. REV. 361, 362–63 (1960). In determining whether there is legally sufficient evidence to support the finding under review, we must consider evidence favorable to the finding if a reasonable factfinder could, and disregard evidence contrary to the finding unless a reasonable factfinder could not. *City of Keller v. Wilson*, 168 S.W.3d 802, 827 (Tex.2005).

▇▇▇ An assertion that the evidence is factually insufficient to support a fact finding means that the evidence supporting the finding is so weak or the evidence to the contrary is so overwhelming that the answer should be set aside and a new trial ordered. *Garza v. Alviar*, 395 S.W.2d 821, 823 (Tex.1965). We are required to consider all of the evidence in the case in making this determination, not just the evidence that supports the finding. *Mar. Overseas Corp. v. Ellis*, 971 S.W.2d 402, 406–07 (Tex), *cert. denied*, 525 U.S. 1017, 119 S.Ct. 541, 142 L.Ed.2d 450 (1998).

▇▇▇ Findings of fact entered in a case tried to the court have the same force and dignity as a jury's answers to jury questions. *Anderson v. City of Seven Points*, 806 S.W.2d 791, 794 (Tex.1991). The trial court's findings of fact are reviewable for legal and factual sufficiency of the evidence to support them by the same standards that are applied in reviewing evidence supporting a jury's answer. *Ortiz v. Jones*, 917 S.W.2d 770, 772 (Tex. 1996); *Catalina v. Blasdel*, 881 S.W.2d 295, 297 (Tex.1994). When findings of fact are filed and are unchallenged, they occupy the same position and are entitled to the same weight as the verdict of a jury; they are binding on an appellate court unless the contrary is established as a matter of law, or if there is no evidence to support the finding. *McGalliard v. Kuhlmann*, 722 S.W.2d 694, 696 (Tex.1986); *Raman Chandler Props., L.C. v. Caldwell's Creek Homeowners Ass'n, Inc.*, 178 S.W.3d 384, 390 (Tex.App.-Fort Worth 2005, pet. denied). Conclusions of law may not be challenged for factual sufficiency, but they may be reviewed to determine their correctness based upon the facts. *Citizens Nat'l Bank v. City of Rhome*, 201 S.W.3d 254, 256 (Tex.App.-Fort Worth 2006, no pet.); *Dominey v. Unknown Heirs & Legal Representatives of Lokomski*, 172 S.W.3d 67, 71 (Tex.App.-Fort Worth 2005, no pet.).

The trial court issued forty-two findings of fact and eighteen conclusions of law. Appellant has not challenged findings of fact one, four, seven, nine, ten, eleven, fourteen, sixteen, nineteen, twenty-one, or thirty-two or conclusions of law four, five, or eight.

## B. Analysis

We previously discussed the validity of the seizure warrant and the procedures taken during the seizure of the property and determined that both were proper under articles 18 and 59 of the code of criminal procedure, respectively. Appellant has not offered any additional evidence to suggest the procedures or requirements of the code of criminal procedure were not properly followed. Therefore, findings of fact two, three, five, six, twelve, eighteen, thirty-nine, forty, and forty-one and conclusions of law one, six, fifteen, and eighteen were supported by sufficient evidence.

We now turn to appellant's additional evidentiary complaints.

■ Article 59 requires that forfeiture proceedings be commenced no later than thirty days after the seizure. TEX.CODE CRIM. PROC. ANN. art. 59.04(a); *State v. Lot 10, Pine Haven Estates,* 900 S.W.2d 400, 401 (Tex.App.-Texarkana 1995, no writ). Appellant contends that the seizure, forfeiture, and filing of the lis pendens were simultaneously done in violation of article 59.04, which, according to appellant, mandates that the property must first be seized before the lis pendens is filed and forfeiture proceedings begin. *See* TEX. CODE CRIM. PROC. ANN. art. 59.04(a), (g). We disagree with appellant's interpretation of article 59.04. There is nothing in the statute, and appellant has provided no relevant law or discussion, indicating that the simultaneous filing of these documents is improper. *See Bochas v. State,* 951 S.W.2d 64, 70 (Tex.App.-Corpus Christi 1997, pet. denied) (holding that forfeiture of real property may be adjudicated before the seizure occurs because real property cannot abscond).

Appellant also challenges the findings of fact and conclusions of law that a certified copy of the notice of seizure and intended forfeiture was filed by the State and served on appellant. However, appellant failed to provide any evidence or relevant analysis to support his challenge. Therefore, we conclude that the requirements of article 59.04 were satisfied, and findings of fact eight, thirteen, fifteen, and seventeen and conclusions of law two, three, and seven were supported by sufficient evidence.

■ Appellant also argues that the evidence was insufficient to establish that methamphetamine was being manufactured and stored on the property. However, in the February 8, 2006 search of the property, officers found several types of drug paraphernalia and several items that field-tested positive as methamphetamine. At trial, Officer John Spragins, an investigator with the North Texas Regional Drug Enforcement Task Force, testified that he was on the team that searched appellant's house. Officer Spragins stated that he had over seven years of experience as a narcotics investigator, had investigated "200 to 300" methamphetamine labs, and had received specialized training in recognizing and investigating methamphetamine production.

When asked about the search of appellant's property, Officer Spragins testified that he found a filter containing a white powder substance on a work bench in appellant's garage. Officer Spragins used an "NIK field test unit" to field test the powder, and the powder tested positive as methamphetamine. According to Officer Spragins, he had used field test units "[t]housands of times." Officer Spragins also found a bag with filters, a white bucket containing a brown liquid, and a clear container with blue liquid; all tested positive for methamphetamine. Further, Officer Spragins found a metal fuel can, an "HCL generator" containing sulfuric acid and salt, digital scales, a pill grinder, a coffee grinder with pink residue inside of it, distillation tubes, Sudafed packaging, syringes, and glass pipes with burn residue, all of which are items commonly found in methamphetamine laboratories. Officer Spragins found "a tin box with two baggies of white powder" in appellant's right front pocket; the powder tested positive as methamphetamine.

According to Officer Spragins, based on the equipment and total weight of methamphetamine found, 1,295.5 grams, "it was obvious to me that [appellant] was manufacturing methamphetamine and distributing methamphetamine" at his home. Neither at trial nor in this appeal did ap-

pellant present any alternative theory as to what the equipment was used for or what the powder and liquid substances were. Thus, the evidence was legally and factually sufficient to prove and show that methamphetamine was being manufactured and stored on the property in violation of chapter 481 of the health and safety code. *See* Tex. Health & Safety Code Ann. §§ 481.102, 481.115. Findings of fact twenty-five, twenty-six, twenty-eight, and thirty-seven and conclusion of law twelve were supported by sufficient evidence.

Appellant also challenges the trial court's findings of fact and conclusion of law that the testimony of Officer Spragins that drugs were found on the property and that the property was located within one thousand feet of an elementary school was true and credible and unchallenged by the defense. However, appellant did not to object to Officer Spragins' testimony regarding his conclusions from the field tests, did not offer any evidence that disparaged the accuracy of the field tests, and did not challenge or object to the location of the property in relation to a public elementary school.[5] Thus, findings of fact twenty-seven, thirty-three, thirty-four, and thirty-eight and conclusion of law thirteen were supported by sufficient evidence.

Appellant also challenges several of the findings of fact and conclusions of law indicating that he was the only person with an interest in the property. Evidence introduced at trial, however, included appellant's testimony that he was the sole owner of the property and that no other person had an interest in the property. Further, appellant testified that he lived at 4125 Blanton, that he paid the bills and utilities there, and that he did not pay rent on the property to anyone else. Appellant also challenges the finding of fact indicating he did not file a disclaimer of interest as to the property within the statutory period of time. However, appellant failed to offer any evidence to support his conclusion. Therefore, we conclude that findings of fact twenty, twenty-two, twenty-three, twenty-nine, thirty, and thirty-one and conclusions of law nine and ten were supported by sufficient evidence.

 Appellant also challenges the finding of fact and conclusion of law that narcotics and narcotic paraphernalia were found on the property. Appellant argues that the term "narcotic" by definition refers to a different category of drugs. Significantly, the word "narcotic," is often used to mean a drug prohibited by law. Black's Law Dictionary 1049 (8th ed.2004); *see Hollis v. State,* 219 S.W.3d 446, 467 (Tex.App.-Austin 2007, no pet.) (using the term "narcotic" to describe all types of drugs, including methamphetamine); *Lee v. State,* 143 S.W.3d 565, 567 (Tex.App.-Dallas 2004, pet. ref'd)(same), *cert. denied,* —— U.S. ——, 126 S.Ct. 2978, 165 L.Ed.2d 986 (2006).

The health and safety code defines "narcotic drug" as opium and opiates and a salt, compound, derivative, or preparation of opium or opiates. Tex. Health & Safety Code Ann. § 481.002(29)(A). "Opiate" is defined as a substance that has an addiction-forming or addiction-sustaining liability similar to morphine or is capable of conversion into a drug having addiction-forming or addiction-sustaining liability. *Id.* § 481.002(30). Thus, methamphetamine could be classified as a narcotic because of its addiction-forming liability. *See id.* § 481.032 (Schedule II) (describing

---

5. The State introduced evidence placing the property within a drug-free zone. *See* Tex. Health & Safety Code Ann. § 481.134.

methamphetamine as having a potential for abuse); *Rivera v. State,* No. 02–05–056–CR, 2006 WL 743030, at *2 n. 4 (Tex. App.-Fort Worth Mar.23, 2006, pet. ref'd) (not designated for publication) (referring to the National Institute on Drug Abuse, The Science of Drug Abuse & Addiction, Methamphetamine, http://www.nida.nih. gov/drugpages/methamphetamine.html (last visited July 11, 2007) (describing methamphetamine as addictive)); *In re W.D.W.,* 173 S.W.3d 607, 610 (Tex.App.-Dallas 2005, no pet.) (describing party's addiction to methamphetamine); *In re K.C.P.,* 142 S.W.3d 574, 581 (Tex.App.-Texarkana 2004, no pet.) (describing appellant as a methamphetamine addict).

Also, the forms of narcotic drugs defined by the statute are grouped in the same penalty group as methamphetamine; thus, the substances carry the same offenses for possession or manufacture of the illegal drugs. TEX. HEALTH & SAFETY CODE ANN. §§ 481.002(29), 481.102, 481.112.

During trial and in its findings of fact and conclusions of law, the trial court referred to the drugs found at appellant's residence as both narcotics and methamphetamine. Because the trial court used the terms "narcotic" and "methamphetamine" interchangeably, and because, in this case, both terms referred to the illegal substance found in appellant's house, finding of fact twenty-four and conclusion of law eleven were supported by sufficient evidence.

Appellant also challenges the finding of fact and conclusion of law that he failed to offer and prove an affirmative defense. Appellant claims this finding was an attempt to switch the burden of proof in the case. However, appellant failed to offer any evidence of an affirmative defense or any relevant analysis supporting this conclusion. Appellant also challenges the finding of fact and conclusion of law that

his due process rights were not violated. However, we previously determined that appellant's due process rights were not violated during the seizure. Consequently, findings of fact thirty-six and forty-two and conclusions of law fourteen and seventeen were supported by sufficient evidence.

Finally, appellant challenges the finding of fact and conclusion of law that the trial court took an adverse inference from his assertion of his Fifth Amendment right against self-incrimination. However, appellant failed to provide any evidence, relevant analysis, or legal theory to support this statement. Consequently, finding of fact thirty-five and conclusion of law sixteen were supported by sufficient evidence.

After a careful review of the record, we conclude that the evidence offered at trial was legally and factually sufficient to establish that the property was contraband and that the seizure was valid. *See City of Keller,* 168 S.W.3d at 827; *Garza,* 395 S.W.2d at 823. Accordingly we overrule appellant's thirteenth, fourteenth, and fifteenth issues.

## VIII. Conclusion

Having overruled appellant's fifteen issues, we affirm the trial court's judgment.