

# COURT OF APPEALS

**SECOND DISTRICT OF TEXAS**
**FORT WORTH**

**NO. 2-07-021-CV**
**NO. 2-07-023-CV**

$1,943.76 IN UNITED STATES                                    APPELLANT
CURRENCY; THIRTY ONE (31)
"8 LINER" MACHINES; TWELVE
(12) ARIZOLA RESTAURANT
GIFT CARDS; NINETEEN (19) QUICK
TRIP GIFT CARDS; SIXTY NINE
(69) WAL-MART SHOPPING CARDS;
ONE ARMI TANFOGLIO GIUSEPPE
.25 PISTOL AND AMMUNITION;
ONE NORINCO MODEL 54 PISTOL
AND AMMUNITION; ONE (1) HP
PAVILLION 6830; ONE MAXELL
3.5 FLOPPY DISK; MISCELLANEOUS
NOTEBOOKS, CHECK BOOKS, AND
ENUMERATED ITEMS

V.

THE STATE OF TEXAS                                            APPELLEE

------------

FROM CRIMINAL DISTRICT COURT NO. 3 AND THE
396TH DISTRICT COURT OF TARRANT COUNTY

------------

-----------

# MEMORANDUM OPINION[1]

-----------

Appellant Billy Joe Farrell, Jr. appeals from the trial court's determination with respect to his property seized under a search warrant. In three issues, Appellant argues that the machines and other property seized were not gambling devices as defined by Texas Penal Code section 47.01(4)(B), that the retroactive application of the Supreme Court of Texas's decision in *Hardy v. State*[2] is an improper application of law, and that the trial court committed reversible error by failing to return the property. Because we hold that the trial court did not err by determining that the "eight liners" at issue here are gambling devices, we affirm the trial court's judgments.

In 2002, Appellant owned and operated a gaming business. As part of his business, Appellant owned "eight liner" gaming machines. After a successful play on one of the machines, a player would be awarded points that could be redeemed for restaurant or retail gift cards or for credit for further play on the machines. In July 2002, Fort Worth police raided the business and

---

[1] *See* Tex. R. App. P. 47.4.

[2] *Hardy v. State*, 102 S.W.3d 123 (Tex. 2003).

2

seized the machines (as well as other items) pursuant to a search warrant. The police also searched, pursuant to a search warrant, the home of one of the gaming room's employees.

The State brought a gambling promotion charge against Appellant but later dismissed it. Appellant then moved for the release of the seized property under article 18.18 of the code of criminal procedure.[3] The presiding judge of the 396th District Court heard the motion while sitting as the 396th District Judge and as the judge for Criminal District Court Number Three and denied relief, after which Appellant brought these appeals.

In its brief, the State argues that this court does not have jurisdiction over this appeal. Because we may not reach the merits of the case if we do not have jurisdiction, we must address this argument.[4]

Article 18.18(b) orders magistrates to take certain actions with respect to confiscated property, and it neither expressly provides for nor abrogates the

---

[3] Tex. Code Crim. Proc. Ann. art. 18.18(b) (Vernon 2005).

[4] *See Grunewald v. Technibilt Corp.*, 931 S.W.2d 593, 597 (Tex. App.—Dallas 1996, writ denied) (holding that because the court lacked subject matter jurisdiction, it had no authority other than to dismiss the appeal); *Protestants v. Am. Pubs, Inc.*, 787 S.W.2d 111, 113 (Tex. App.—Houston [1st Dist.] 1990, writ denied) (stating that a court must dismiss a case if it becomes apparent that the court has no authority to adjudicate it).

right of appeal from magisterial determinations under that article.[5] A forfeiture proceeding is in rem and is civil in nature.[6] We have jurisdiction over appeals in civil matters arising from district courts.[7] But the State argues that we do not have jurisdiction over this civil matter because the district court was acting as a magistrate and appellate courts do not have jurisdiction over determinations by magistrates under article 18.18.

We disagree. Under the Texas Constitution, district courts have jurisdiction over forfeiture proceedings.[8] The Supreme Court of Texas has held that because the legislature cannot take away the jurisdiction given to a district court by the constitution, "the most that the Legislature could constitutionally accomplish in [a]rticle 18.18(b)-(f)[] was to grant concurrent jurisdiction to a court . . . that was not also a district court."[9] Thus, article 18.18 allows for courts in addition to district courts to preside over forfeiture proceedings. Because the district court had jurisdiction over the forfeiture proceedings by

---

[5] *See* Tex. Code Crim. Proc. Ann. art. 18.18(b).

[6] *Hardy*, 102 S.W.3d at 126–27.

[7] *See* Tex. Civ. Prac. & Rem. Code Ann. § 51.012 (Vernon 2008).

[8] *See* Tex. Const. art. V, § 8.

[9] *State v. Dugar*, 553 S.W.2d 102, 105 (Tex. 1977).

virtue of the constitutional powers granted to district courts[10] or the statutory

powers granted to courts acting as magistrates,[11] we have jurisdiction over this

appeal.[12] We overrule the State's jurisdictional challenge.

We now turn to the merits of the appeal. In Appellant's first issue, he

argues that the machines and other property seized were not gambling devices

as that term is defined by Texas Penal Code section 47.01(4)(B). In Appellant's

brief, however, he limits his argument to error as to the forfeiture of his "eight

liner" machines. Appellant makes no argument as to why the other items

seized are not gambling devices or not otherwise subject to forfeiture under

article 18.18.[13] We therefore affirm the trial court's judgments as to the other

_____

[10] *See* Tex. Const. art. V, § 8.

[11] *See* Tex. Code Crim. Proc. Ann. art. 18.18(b)–(f); *State ex rel. Holmes v. Salinas*, 784 S.W.2d 421, 424 (Tex. Crim. App. 1990) (orig. proceeding) (holding no jurisdictional defect and that district court held position of magistrate "solely through his office of district judge" and therefore his "authority to act in the capacity of magistrate [was] dependent upon his office."

[12] *See* Tex. Civ. Prac. & Rem. Code Ann. § 51.012; *see also Brown v. Barlow*, 685 S.W.2d 406, 407 (Tex. App.—San Antonio 1985, no writ) (noting that the Supreme Court of Texas has implicitly held that rulings by magistrates under article 18.18 are appealable).

[13] *See* Tex. Code Crim. Proc. Ann. art. 18.18(b) (Vernon Supp. 2008) (providing for the forfeiture of any seized "gambling device or equipment, altered gambling equipment or gambling paraphernalia, gambling proceeds, prohibited weapon, obscene device or material, child pornography, scanning device or re-encoder, criminal instrument, or dog-fighting equipment" unless

property seized and limit our analysis of his issues to the "eight liners."[14]

Article 18.18 provides that after a person is convicted for possession of a gambling device, "the court entering the judgment of conviction shall order that the . . . device . . . be destroyed or forfeited to the state."[15] But if no prosecution or conviction results from the seizure, "the magistrate to whom the return was made shall notify in writing the person found in possession of the alleged gambling device . . . to show cause why the property seized should not be destroyed."[16]

If the person appears to show cause, the magistrate must conduct a hearing, but "[u]nless the person proves by a preponderance of the evidence that the property . . . is not . . . [a] gambling device . . . and that he is entitled to possession, the magistrate shall dispose of the property."[17] The article incorporates the penal code definition of gambling device.[18]

___

cause is shown why it should not be forfeited).

[14] *See Pat Baker Co., Inc. v. Wilson*, 971 S.W.2d 447, 450 (Tex. 1998) ("It is axiomatic that an appellate court cannot reverse a trial court's judgment absent properly assigned error.").

[15] Tex. Code Crim. Proc. Ann. art. 18.18(a).

[16] *Id.* art. 18.18(b).

[17] *Id.* art. 18.18(f).

[18] *Id.* art. 18.18(g)(2).

Penal code section 47.01 defines the term "gambling device" as "any electronic, electromechanical, or mechanical contrivance . . . that for a consideration affords the player an opportunity to obtain anything of value, the award of which is determined solely or partially by chance, even though accompanied by some skill, whether or not the prize is automatically paid by the contrivance."[19] The definition expressly excludes devices that would otherwise fall within the statutory definition if they reward players "*exclusively* with noncash merchandise prizes, toys, or novelties, or a representation of value redeemable for those items," where the noncash prizes have a value under a certain amount.[20] No one disputes that the "eight liners" at issue here meet the general definition of "gambling device." But Appellant argues that at the time the devices were seized, they came within the exception under section 47.01(4)(B), in that players were rewarded with noncash merchandise, and no player was awarded a prize from a single play having a wholesale value more than the statutorily proscribed amount.

In June 2001, both the Waco and Austin Courts of Appeals handed down decisions reaching different conclusions as to whether a gambling device that

---

[19] Tex. Penal Code Ann. § 47.01(4) (Vernon 2003).

[20] *Id.* § 47.01(4)(B) (emphasis added).

awarded points redeemable for gift certificates fell within the statutory exception in section 47.01(4)(B).[21] The Supreme Court of Texas decided this issue in *Hardy* and held that these devices are gambling devices.[22] In *Hardy*, the devices at issue awarded tickets redeemable either for gift certificates or for cash for further play on the machines. The court held that gift certificates are a money equivalent, and therefore the machines did not award tickets redeemable *exclusively* for noncash prizes and thus did not fit the exclusion under section 47.01(4)(B). The "eight liners" owned by Appellant likewise awarded points that could be redeemed for retail or restaurant gift certificates or for further play on the machines either at that time or some time in the future. Thus, because Appellant's gambling devices did not reward players exclusively with noncash prizes, under *Hardy*, they do not meet the exclusion and are prohibited gambling devices.

Appellant points to the Amarillo Court of Appeal's decision in *Twenty-Nine (29) Gambling Devices v. State*[23] and argues that the court there

---

[21] *Compare State v. One Super Cherry Master Video 8-Liner Mach.*, 55 S.W.3d 51, 55 (Tex. App.—Austin 2001), *rev'd,* 102 S.W.3d 132 (Tex. 2003), *with Hardy v. State*, 50 S.W.3d 689, 697 (Tex. App.—Waco 2001), *aff'd*, 102 S.W.3d 123 (Tex. 2003).

[22] *Hardy*, 102 S.W.3d at 131.

[23] 110 S.W.3d 146 (Tex. App.—Amarillo 2003, no pet.).

"conceded" that before the supreme court's *Hardy* decision, there was a conflict between the Austin and Waco Courts of Appeals and that "if the Amarillo court cannot decide whether [the Austin Court of Appeals' holding in *Cherry Master*] or [the Waco Court of Appeals' holding in *Hardy*] prevails, how can Appellant determine if his business involves gaming and [not] gambling?" Appellant misconstrues the opinion. The Amarillo court noted that prior to *Hardy*, there was a split in the courts of appeals as to whether the State bore the burden of proof at an article 18.18 hearing. Regarding the appellant's argument that the devices at issue fit the statutory exception because they awarded points redeemable for gift certificates and not cash, the court stated that this position was foreclosed by the supreme court's decision in *Hardy*.[24] We overrule Appellant's first issue.

The supreme court handed down the *Hardy* decision in 2003, after the State seized Appellant's devices. In Appellant's third issue, he argues that the trial court reversibly erred by failing to return the property because *Hardy* should not be applied retroactively. The supreme court has stated that "[a] decision of [that court] operates retroactively unless [that court] exercises its discretion

---

[24] *Id.* at 151.

to modify that application."[25] Here, the supreme court did not announce a limitation on the retroactive application of *Hardy*. On the same day it handed down that decision, it handed down another case relating to the same type of gambling devices, referred to *Hardy* as controlling on the issue, and did not discuss at all whether *Hardy* should be applied retroactively or prospectively.[26]

But the supreme court has also said that although its decisions usually apply retroactively, "exceptions are recognized when considerations of fairness and policy dictate prospective effect only."[27] The court adopted factors from the United States Supreme Court for determining when to apply a decision retroactively. The factors are:

> (1) whether the decision establishes a new principle of law by either overruling clear past precedent on which litigants may have relied or by deciding an issue of first impression whose resolution was not clearly foreshadowed; (2) whether prospective or retroactive application of the particular rule will further or retard its operation through an examination of the history, purpose, and effect of the rule; and (3) whether retroactive application of the rule could produce substantial inequitable results.[28]

Appellant argues that the first element is "easily met" because prior to the

---

[25] *Bowen v. Aetna Cas. & Sur. Co.*, 837 S.W.2d 99, 100 (Tex. 1992).

[26] *State v. One Super Cherry Master Video 8-Liner Machine*, 102 S.W.3d 132, 133 (Tex. 2003).

[27] *Elbaor v. Smith*, 845 S.W.2d 240, 250 (Tex. 1992).

[28] *Id.*

*Hardy* decision, courts of appeals had been split on the issue of whether these devices met the exception of 47.01(4)(B). We disagree. That at least one Texas appellate court had held that these devices did not meet the statutory exception should have indicated to Appellant that reasonable minds could reach the same conclusion, and because of the disagreement between the courts of appeals, one could foresee the likelihood that the supreme court would consider the issue.[29] Thus, the first factor does not favor Appellant.

On the second factor, Appellant's argument is that he paid a permit tax through the city of Fort Worth and a license fee to the state comptroller. Thus, a retroactive application would put the State in the position of having charged taxes on illegal gambling equipment. He also raises the question of whether he would have a cause of action against those to whom he paid taxes and fees and argues that "[i]t would be difficult to see why any retroactive application of [*Hardy*] would do anything but hinder the Court's opinion." The rule at issue here is that because money prizes are prohibited by statute, monetary equivalents are also prohibited, and none of Appellant's arguments persuade us

---

[29] *Cf. id.* (determining that the case represented an issue of first impression whose resolution was not clearly foreshadowed because "only a couple of states [had] previously" reached the same holding and that "[t]he only Texas opinion which even hinted" at such a holding was one concurring opinion).

that a retroactive application of the rule would retard its operation.

As for the third factor, Appellant argues that he bought the devices from the city of Waco, acquired a permit for his business and a license from the Texas comptroller, paid for a maintenance contract for a damaged device, paid amusement tax, purchased gift cards for prizes, purchased restaurant gift cards, obtained a bank loan to purchase the devices, and was forced to pay the loan after the devices were seized. He contends that the financial hardships he suffered because of the total collapse of his business after the seizure "when a reasonable person would cite [the Austin Court of Appeals' opinion in *Cherry Master*[30]] as an authority to stay in business is pat[e]ntly unfair," and he should be allowed to sell the machines in a jurisdiction where they are legal so as to recoup his losses. These results are not "substantial inequitable results." A reasonable person would not have relied on an opinion from the Austin Court of Appeals as controlling in this district on an issue that this court had not yet determined.[31] That is particularly true here when in the same month that the Austin Court of Appeals decided *Cherry Master*, the Waco Court of Appeals

---

[30] *Cherry Master*, 55 S.W.3d at 55.

[31] *See Eubanks v. Mullin*, 909 S.W.2d 574, 576 n.1 (Tex. App.—Fort Worth 1995, no writ) (noting that the opinions of other courts of appeals are persuasive but not controlling).

reached the opposite conclusion.[32]  And Appellant's evidence shows that he acquired the business permit and the license from the comptroller after the Waco court declared that machines awarding these types of prizes did not meet the statutory exception, so Appellant could not have reasonably relied on the *Cherry Master* holding in making his decision to run these machines in his business.  We overrule Appellant's third issue.

Appellant in his second issue argues that with the *Hardy* decision, the supreme court "changed the rules" by deciding that gift cards are equivalents of money.  He contends that a retroactive application of *Hardy* is an improper application of law because the federal and Texas constitutions prohibit ex post facto laws.

Prohibitions against ex post facto laws "apply to civil statutes only when the statutory scheme is so punitive either in purpose or effect as to transform what was clearly intended as a civil remedy into a criminal penalty."[33]  A forfeiture proceeding under article 18.18 is civil in nature and is against the property and not the owner of the property and is therefore usually not

---

[32] *See Hardy*, 50 S.W.3d at 697.

[33] *Real Prop. Located at 4125 Blanton, Wichita Falls, Wichita County, Tex., With a Legal Description of Lot 1 Block 4 Univ. Park B1, Wichita County, Tex. v. State*, 230 S.W.3d 476, 483 (Tex. App.—Fort Worth 2007, pet. denied).

13

punitive.[34]  Thus, a retroactive application of *Hardy* does not constitute an ex post facto law.

Appellant further argues that the seizure of the devices combined with the modification of the definition of gambling device under *Hardy* and the application of that definition to his case "completely impaired Appellant's obligation with his contract with Azle Bank."  We infer this to be an argument that a retroactive application of *Hardy* would violate the Texas Constitution's prohibition against the enactment of a retroactive law impairing the obligation of contracts.[35]  Appellant did not raise this argument in the trial court, and he may not raise it now for the first time on appeal.[36]  We overrule his second issue.

Finally, we address an issue raised during oral arguments in this case. The State seized Appellant's property in July 2002.  The case against Appellant

---

[34] *See id.* (holding that civil forfeiture proceedings under chapter 59 of the code of criminal procedure "are civil, in rem proceedings against property rather than against the defendant and are not normally classified as punishment"); *Hardy*, 102 S.W.3d at 126–27 (noting that forfeiture proceedings under article 18.18 are civil, in rem proceedings).

[35] *See* Tex. Const. art. I, § 16; *Wessely Energy Corp. v. Jennings*, 736 S.W.2d 624, 627 (Tex. 1987).

[36] *See In re J.B.W.*, 99 S.W.3d 218, 225 (Tex. App.—Fort Worth 2003, pet. denied) ("There is no right to complain of unpreserved trial court error for the first time on appeal, except when the error is fundamental.").

was dismissed in June 2004. No action was taken by the State under article 18.18 after the dismissal, and Appellant filed a motion for a release of the property in October 2006, more than two years after the charges were dismissed. Following oral arguments, the parties filed supplemental briefs addressing a question raised during argument as to how long the State may wait to bring a motion for forfeiture under article 18.18 before the motion is no longer "timely" under the statute and forfeiture is waived.[37] This issue was not raised in the trial court, however, and therefore we may not address it on appeal.[38]

Having overruled all of Appellant's issues, we affirm the trial court's judgments.

LEE ANN DAUPHINOT
JUSTICE

PANEL: DAUPHINOT and MCCOY, JJ.; and DIXON W. HOLMAN, J. (Senior Justice, Retired, Sitting by Assignment).

DELIVERED: January 29, 2009

---

[37] *See* Tex. Code Crim. Proc. Ann. art. 18.18(b) (requiring law enforcement agency informed by the State that no prosecution will result from seizure to "timely" make motion for show cause hearing on forfeiture).

[38] *See* Tex. R. App. P. 33.1(a); *Pat Baker Co.*, 971 S.W.2d at 450 (holding that appellate court may not reverse based on a complaint not raised in the trial court).