COURT
OF APPEALS

                                       SECOND
DISTRICT OF TEXAS

                                                   FORT
WORTH

 

 

                                        NO.
2-07-017-CV

 

 

1996 CADILLAC AND                                                          APPELLANT

2002
LINCOLN AUTOMOBILES

 

                                                   V.

 

THE STATE OF TEXAS                                                                STATE

 

                                              ------------

 

           FROM
THE 372ND DISTRICT COURT OF TARRANT COUNTY

 

                                              ------------

 

                                MEMORANDUM
OPINION[1]

 

                                              ------------

This an appeal from the civil
forfeiture of two automobiles.  In one
point, appellant alleges that the evidence is legally insufficient to support
the trial court's finding that the two automobiles were contraband.  We reverse and render in part and affirm in
part.








Background Facts

On March 21,
2006, Tarrant County Deputy Sheriff Jerry Tebay served two arrest warrants for
possession of a controlled substance on Jeffrey Joas at 825 Bedford Road in
Hurst, Texas.  Deputy Tebay had been
investigating Joas=s
whereabouts for approximately six months and had learned that Joas had a
girlfriend named Heather Dean, with whom he might be living.  He also had learned that Joas had been
driving a black Corvette, a gold Cadillac, and a gray Lincoln.  Before serving the warrant, Deputy Tebay
watched the apartment complex for three weeks at different times of the day; he
saw Heather and Joas using both the Cadillac and Lincoln.  








On March 21, 2006, the day he
served the warrant, Deputy Tebay found the Lincoln in the parking lot of the
apartment complex.  After he looked into
the car, he concluded that Joas had probably been driving it because the driver=s seat was pushed all the way to the furthermost position from the
steering wheel; Joas was taller than Heather. 
Deputy Tebay then assisted Hurst police officers in serving the warrant.
 No one would open the apartment door
although Deputy Tebay could tell there were people inside.  Deputy Tebay forced the front door open and
found Heather in the bathroom, sitting on the toilet.  He noticed an odd crunching underneath his
feet and slid trying to get out the back door. 
Joas was trying to escape from the back of the apartment, but Deputy
Tebay took him into custody on the balcony. 

When Deputy Tebay walked back
into the apartment, he walked back through the bathroom and noticed the same
crunching sound.  He looked down and saw
what he thought was crystal methamphetamine. 
Deputy Tebay then left the apartment with Joas and drove to the Tarrant
County Sheriff=s Office,
where he booked Joas on the two warrants. 
Deputy Tebay returned to the scene briefly and helped Hurst police
officer Tom McElwee collect evidence from the bathroom floor. 

After police served the
warrants for Joas, Officer Chuck Wiesman arrived at the apartment complex with
Buster, a trained narcotics dog.  Buster
alerted to the presence of narcotics on the driver=s side door of the Lincoln, but he did not alert on the Cadillac.  Although officers did not find any drugs in
the Lincoln, Officer Wiesman explained that Buster alerts to the residue and
derivatives of narcotics Awhere it=s been touched or laid up against the metal or cloth or whatever.@  Officer Wiesman admitted that
Buster could have alerted to just the odor of narcotics on someone who had been
in the vehicle.  








Hurst police officer Tom
McElwee, an investigator with the Tarrant County narcotics unit, arrived at the
apartment after officers served the warrants for Joas.  He Awas told that there [were] narcotics in plain view,@ and in walking around the apartment, he observed Aa relatively large amount@ of what he thought was methamphetamine in the bathroom.  He also learned that Karen Dean, Heather's
mother, was the apartment lessee but that Heather and Joas were both living
there.  

After acquainting himself
with the scene, Officer McElwee obtained written consent from Karen to search
the apartment.  He found methamphetamine
in several places in the bathroom, including a baggy of it in the toilet, and
from the carpet in the hallway.  He also
found several empty Adeal baggies@ in the toilet and a blank digital scale in the bathroom.  Officer McElwee also found methamphetamine in
the bedroom.  

Officer McElwee found a set
of keys to the Cadillac in Heather=s purse.  Heather told Officer
McElwee that she had purchased the Cadillac for $5,000 cash but that she had
never registered it.  Officer McElwee
later determined that the Cadillac was registered to an owner in Burleson,
Texas.[2]  Officer McElwee also determined that Heather
was the registered owner of the Lincoln, with Joas shown as the
lienholder.  Officer McElwee searched
both cars pursuant to a warrant, but he did not find any drugs.  








In the course of
investigating the case, Officer McElwee determined that Heather had been living
at the apartment about a month.[3]  On the day of Joas=s arrest and the search of the apartment, Heather told Officer McElwee
that she did not have a full-time job. 
In searching the apartment, Officer McElwee did not find any evidence
that Heather was employed. 

Officer McElwee testified at
trial that in the majority of drug cases in his experience, drug dealers use
vehicles that are registered in other people=s names because they mistakenly believe the vehicles cannot be seized
if they belong to someone else.  He also
testified that, based on his experience, when Heather was found sitting on the
toilet, she was in possession of a Adealer quantity@ of
methamphetamine.  He estimated the street
value to be between eight hundred and one thousand dollars.  He said that his conclusion was also
supported by the presence of the scale and deal baggies.








Officer McElwee also
testified that in his training and experience, a drug dealer was more likely to
keep drugs in his or her residence than in a vehicle because if he or she is
stopped with drugs in the car, Athey=ll generally
lose the vehicle in a seizure case such as this.@  Based on the totality of the
circumstances, Officer McElwee believed that the vehicles were used or intended
to be used in connection with illegal drug sales and seized them under chapter
59 of the code of criminal procedure. 
According to Officer McElwee, when police served the warrant, Joas was a
suspect in an evading case from a different city in which the officers recovered
$80,000, which Joas never claimed; that led Officer McElwee to believe that
either Joas or Heather had transported narcotics before.

Based on this evidence, the
trial court concluded that both the Cadillac and Lincoln were contraband and
thus found that they should both be forfeited under chapter 59 of the code of
criminal procedure.  Heather challenges
the legal sufficiency of the evidence to support the trial court=s judgment.

Standard of Review








We may sustain a legal sufficiency challenge only when (1)
the record discloses a complete absence of evidence of a vital fact; (2) the
court is barred by rules of law or of evidence from giving weight to the only
evidence offered to prove a vital fact; (3) the evidence offered to prove a
vital fact is no more than a mere scintilla; or (4) the evidence establishes
conclusively the opposite of a vital fact. 
Uniroyal Goodrich Tire Co. v. Martinez, 977 S.W.2d 328, 334 (Tex.
1998), cert. denied, 526 U.S. 1040 (1999);
Robert W. Calvert, ANo Evidence@ and AInsufficient
Evidence@ Points of
Error, 38 TEX. L. REV. 361, 362B63 (1960).  In determining whether there is legally
sufficient evidence to support the finding under review, we must consider
evidence favorable to the finding if a reasonable fact-finder could and
disregard evidence contrary to the finding unless a reasonable fact-finder
could not.  City of Keller v. Wilson,
168 S.W.3d 802, 807, 827 (Tex. 2005).

Anything more than a scintilla of evidence is legally
sufficient to support the finding.  Cont=l Coffee Prods.
Co. v. Cazarez, 937 S.W.2d 444, 450 (Tex. 1996); Leitch v. Hornsby,
935 S.W.2d 114, 118 (Tex. 1996).  When
the evidence offered to prove a vital fact is so weak as to do no more than
create a mere surmise or suspicion of its existence, the evidence is no more
than a scintilla and, in legal effect, is no evidence.  Kindred v. Con/Chem, Inc., 650 S.W.2d
61, 63 (Tex. 1983).  More than a
scintilla of evidence exists if the evidence furnishes some reasonable basis
for differing conclusions by reasonable minds about the existence of a vital
fact.  Rocor Int=l, Inc. v. Nat=l Union Fire Ins.
Co.,
77 S.W.3d 253, 262 (Tex. 2002).

Any ultimate fact may be proved by circumstantial
evidence.  Russell v. Russell, 865
S.W.2d 929, 933 (Tex. 1993).  A fact is
established by circumstantial evidence when the fact may be fairly and
reasonably inferred from other facts proved in the case.  Id. 
However, to withstand a legal sufficiency challenge, circumstantial
evidence still must consist of more than a scintilla.  Blount v. Bordens, Inc., 910 S.W.2d
931, 933 (Tex. 1995).








Applicable Law

Chapter 59 of the Texas Code
of Criminal Procedure prescribes the procedures governing civil forfeiture,
which is an in rem proceeding against contraband.  State v. Silver Chevrolet Pickup, 140
S.W.3d 691, 692-93 (Tex. 2004); Hardy v. State, 102 S.W.3d 123, 126‑27
(Tex. 2003).  AContraband@ is defined
as property of any nature that is used or intended to be used in the commission
of, that constitutes proceeds of, or has been acquired with the proceeds of,
certain enumerated felonies.  Tex. Code Crim. Proc. Ann. art. 59.01(2) (Vernon 2006); Silver
Chevrolet Pickup, 140 S.W.3d at 692-93. 
Personal property that has been used in the commission of a felony in
violation of chapter 481 of the Texas Health and Safety Code, the Texas
Controlled Substance Act, is contraband subject to forfeiture.  Tex.
Code Crim. Proc. Ann. art. 59.01(2)(B)(i); Tex. Health & Safety Code Ann. '' 481.001B.314 (Vernon
2003 & Supp. 2007); Real Prop. Located at 4125 Blanton, Wichita Falls v.
State, 230 S.W.3d 476, 481 (Tex. App.CFort Worth 2007, pet. denied). 
Methamphetamine is a controlled substance, and possession of it is a
felony. 
Tex. Health & Safety Code Ann. '' 481.102(6), 481.115; Real Property, 230 S.W.3d at 481.








In a Chapter 59 forfeiture
hearing, the trial court must first determine whether the property in question
is, indeed, Acontraband@ as defined by statute.  Tex. Code Crim. Proc. Ann. arts.
59.01(2), 59.05 (Vernon 2006); One Car, 1996 Dodge X‑Cab Truck v.
State, 122 S.W.3d 422, 424 (Tex. App.CBeaumont 2003, no pet.).  The
State must establish, by a preponderance of the evidence, a substantial nexus
or connection between the property to be forfeited and statutorily defined
criminal activity.  State v. $11,014.00,
820 S.W.2d 783, 785 (Tex. 1991); Forty‑Seven Thousand Two Hundred
Dollars U.S. Currency, et al. v. State, 883 S.W.2d 302, 306 (Tex. App.CEl Paso 1994, writ denied); Spurs v. State, 850 S.W.2d 611, 614
(Tex. App.CTyler 1993,
writ denied).  Thus, the State must
prove, considering all the evidence, that it was more reasonably probable than
not that the seized property was either intended for use in, or derived from, a
violation of the offenses enumerated in the forfeiture statute.  $9,050.00 in U.S. Currency v. State,
874 S.W.2d 158, 161 (Tex. App.CHouston [14th Dist.] 1994, writ denied).  The State may prove this nexus through
circumstantial evidence.  $11,014.00,
820 S.W.2d at 785.

Analysis








Here, the
First Amended Notice of Seizure and Forfeiture filed by the State alleges that
the Cadillac and Lincoln were used or intended to be used in the commission of
a felony under chapter 481 of the health and safety code. In the alternative,
the State alleged that the automobiles were either proceeds of, or acquired
with proceeds of, a felony under chapter 481. 
The trial court=s judgment
states that the court found that the vehicles were used or intended to be used
in the commission of a felony.  

The State concedes that there
is no evidence that the Cadillac was used or intended to be used in the
commission of a felony.  Instead, the
State contends that the evidence is legally sufficient to prove that Heather
acquired the Cadillac with proceeds from a chapter 481 felony.  The State points to (1) Heather=s possession of a dealer quantity of methamphetamine when she was
found in the apartment, (2) her past history of possession and delivery of
methamphetamine since 2004, and (3) Officer McElwee=s testimony that Heather told him she was not working full-time and
that she had paid $5,000 cash for the car, as sufficient evidence that Heather
bought the Cadillac with proceeds of a chapter 481 felony.








But this evidence creates no
more than a mere surmise or suspicion. 
It is unclear from the evidence when Heather purchased the Cadillac
although it must have been sometime after March 2, 2005, because that is the
date of the title application receipt for the prior owner.[4]  There is no evidence that Heather was
unemployed or working part-time when she bought the car, nor is there any
evidence as to how long she had not been working a full-time job at the time of
Joas's arrest.   Additionally, there is
no evidence of the extent of her involvement in any drug dealing at that
time.  Even assuming that she was
actively involved in dealing drugs when she purchased the Cadillac, the
evidence is still too attenuated to conclude that she purchased the Cadillac
with the proceeds of that drug dealing. 
Accordingly, we conclude and hold that the evidence is legally
insufficient to prove that the Cadillac was contraband for purposes of section
59.01(a)(2).








As to the Lincoln, however,
there is some evidence that Joas had been driving the Lincoln and that drugs
had come into contact with the driver=s side door.  This is a more
substantial connection between the Lincoln and Joas, who was the object of the
arrest warrants for possession of methamphetamine, a felony, and who, along
with Heather, was found in the apartment in close proximity to a dealer
quantity of methamphetamine.  See $11,014.00,
820 S.W.2d at 784-85.  In addition, the
Lincoln was registered to Heather with a lien in Joas=s name.  The evidence showed
that the previous owner of the car was Baillargeon Preowned and that Heather
had purchased the car for $18,950 just two months before police seized it.  Because Baillargeon did not have a lien, it
is a reasonable inference that Heather and Joas, or Joas as the lienholder,
paid for the Lincoln in full.  According
to Officer McElwee, Joas was a suspect in an evading arrest case in which
$80,000 cash had been found in a vehicle that Joas was suspected of driving,
and Joas had never claimed that money. 
We conclude and hold that it can be fairly and reasonably inferred from
this circumstantial evidence that the Lincoln was obtained with proceeds from a
chapter 481 felony; thus, we hold that the evidence is legally sufficient to
support the trial court=s finding
that the Lincoln was contraband.  See
$165,524.78 v. State, 47 S.W.3d 632, 634, 636-37 (Tex. App.CHouston [14th Dist.] 2001, pet. denied), cert. denied, 537 U.S.
974 (2002).

We overrule Heather=s sole point in part as to the Lincoln, but we sustain it in part as
to the Cadillac.  Accordingly, we affirm
the trial court=s judgment
as to the Lincoln, but we reverse the judgment as to the Cadillac and render a
judgment that the Cadillac is not subject to forfeiture by the State.  See Tex.
R. App. P. 43.2(c).

 

TERRIE LIVINGSTON

JUSTICE

 

PANEL B:   LIVINGSTON, WALKER,
and McCOY, JJ.

DELIVERED:        January
17, 2008











[1]See Tex. R. App. P. 47.4.





[2]The
former owner of the Cadillac and the bank shown as the lienholder of record
each filed a Waiver of Citation, Acceptance of Service and Disclaimer of
Interest disclaiming any lien or other interest in the vehicle. 





[3]There
is no evidence in the record as to how long Joas had been living at the
apartment.





[4]The
State admitted this receipt into evidence.