COURT OF APPEALS

SECOND DISTRICT OF TEXAS

FORT WORTH

NO. 2-07-017-CV

1996 CADILLAC AND APPELLANT

2002 LINCOLN AUTOMOBILES

V.

THE STATE OF TEXAS STATE

------------

FROM THE 372ND DISTRICT COURT OF TARRANT COUNTY

------------

MEMORANDUM OPINION
(footnote: 1)

------------

This an appeal from the civil forfeiture of two automobiles.  In one point, appellant alleges that the evidence is legally insufficient to support the trial court's finding that the two automobiles were contraband.  We reverse and render in part and affirm in part.

Background Facts

On March 21, 2006, Tarrant County Deputy Sheriff Jerry Tebay served two arrest warrants for possession of a controlled substance on Jeffrey Joas at 825 Bedford Road in Hurst, Texas.  Deputy Tebay had been investigating Joas’s whereabouts for approximately six months and had learned that Joas had a girlfriend named Heather Dean, with whom he might be living.  He also had learned that Joas had been driving a black Corvette, a gold Cadillac, and a gray Lincoln.  Before serving the warrant, Deputy Tebay watched the apartment complex for three weeks at different times of the day; he saw Heather and Joas using both the Cadillac and Lincoln.  

On March 21, 2006, the day he served the warrant, Deputy Tebay found the Lincoln in the parking lot of the apartment complex.  After he looked into the car, he concluded that Joas had probably been driving it because the driver’s seat was pushed all the way to the furthermost position from the steering wheel; Joas was taller than Heather.  Deputy Tebay then assisted Hurst police officers in serving the warrant.  No one would open the apartment door although Deputy Tebay could tell there were people inside.  Deputy Tebay forced the front door open and found Heather in the bathroom, sitting on the toilet.  He noticed an odd crunching underneath his feet and slid trying to get out the back door.  Joas was trying to escape from the back of the apartment, but Deputy Tebay took him into custody on the balcony. 

When Deputy Tebay walked back into the apartment, he walked back through the bathroom and noticed the same crunching sound.  He looked down and saw what he thought was crystal methamphetamine.  Deputy Tebay then left the apartment with Joas and drove to the Tarrant County Sheriff’s Office, where he booked Joas on the two warrants.  Deputy Tebay returned to the scene briefly and helped Hurst police officer Tom McElwee collect evidence from the bathroom floor. 

After police served the warrants for Joas, Officer Chuck Wiesman arrived at the apartment complex with Buster, a trained narcotics dog.  Buster alerted to the presence of narcotics on the driver’s side door of the Lincoln, but he did not alert on the Cadillac.  Although officers did not find any drugs in the Lincoln, Officer Wiesman explained that Buster alerts to the residue and derivatives of narcotics “where it’s been touched or laid up against the metal or cloth or whatever.”  Officer Wiesman admitted that Buster could have alerted to just the odor of narcotics on someone who had been in the vehicle.  

Hurst police officer Tom McElwee, an investigator with the Tarrant County narcotics unit, arrived at the apartment after officers served the warrants for Joas.  He “was told that there [were] narcotics in plain view,” and in walking around the apartment, he observed “a relatively large amount” of what he thought was methamphetamine in the bathroom.  He also learned that Karen Dean, Heather's mother, was the apartment lessee but that Heather and Joas were both living there.  

After acquainting himself with the scene, Officer McElwee obtained written consent from Karen to search the apartment.  He found methamphetamine in several places in the bathroom, including a baggy of it in the toilet, and from the carpet in the hallway.  He also found several empty “deal baggies” in the toilet and a blank digital scale in the bathroom.  Officer McElwee also found methamphetamine in the bedroom.  

Officer McElwee found a set of keys to the Cadillac in Heather’s purse.  Heather told Officer McElwee that she had purchased the Cadillac for $5,000 cash but that she had never registered it.  Officer McElwee later determined that the Cadillac was registered to an owner in Burleson, Texas.
(footnote: 2)  Officer McElwee also determined that Heather was the registered owner of the Lincoln, with Joas shown as the lienholder.  Officer McElwee searched both cars pursuant to a warrant, but he did not find any drugs.  

In the course of investigating the case, Officer McElwee determined that Heather had been living at the apartment about a month.
(footnote: 3)  On the day of Joas’s arrest and the search of the apartment, Heather told Officer McElwee that she did not have a full-time job.  In searching the apartment, Officer McElwee did not find any evidence that Heather was employed. 

Officer McElwee testified at trial that in the majority of drug cases in his experience, drug dealers use vehicles that are registered in other people’s names because they mistakenly believe the vehicles cannot be seized if they belong to someone else.  He also testified that, based on his experience, when Heather was found sitting on the toilet, she was in possession of a “dealer quantity” of methamphetamine.  He estimated the street value to be between eight hundred and one thousand dollars.  He said that his conclusion was also supported by the presence of the scale and deal baggies.

Officer McElwee also testified that in his training and experience, a drug dealer was more likely to keep drugs in his or her residence than in a vehicle because if he or she is stopped with drugs in the car, “they’ll generally lose the vehicle in a seizure case such as this.”  Based on the totality of the circumstances, Officer McElwee believed that the vehicles were used or intended to be used in connection with illegal drug sales and seized them under chapter 59 of the code of criminal procedure.  According to Officer McElwee, when police served the warrant, Joas was a suspect in an evading case from a different city in which the officers recovered $80,000, which Joas never claimed; that led Officer McElwee to believe that either Joas or Heather had transported narcotics before.

Based on this evidence, the trial court concluded that both the Cadillac and Lincoln were contraband and thus found that they should both be forfeited under chapter 59 of the code of criminal procedure.  Heather challenges the legal sufficiency of the evidence to support the trial court’s judgment.

Standard of Review

We may sustain a legal sufficiency challenge only when (1) the record discloses a complete absence of evidence of a vital fact; (2) the court is barred by rules of law or of evidence from giving weight to the only evidence offered to prove a vital fact; (3) the evidence offered to prove a vital fact is no more than a mere scintilla; or (4) the evidence establishes conclusively the opposite of a vital fact.  
Uniroyal Goodrich Tire Co. v. Martinez
, 977 S.W.2d 328, 334 (Tex. 1998),
 cert. denied
, 526 U.S. 1040 (1999);
 Robert W. Calvert, 
“No Evidence”
 
and “Insufficient Evidence” Points of Error
, 38 T
EX
. L. R
EV
. 361, 362–63 (1960)
.  In determining whether there is legally sufficient evidence to support the finding under review, we must consider evidence favorable to the finding if a reasonable fact-finder could and disregard evidence contrary to the finding unless a reasonable fact-finder could not.
  
City of Keller v. Wilson
, 
168 S.W.3d 802, 807, 827
 (Tex. 2005).

Anything more than a scintilla of evidence is legally sufficient to support the finding.  
Cont’l Coffee Prods. Co. v. Cazarez
, 937 S.W.2d 444, 450 (Tex. 1996); 
Leitch v. Hornsby
, 935 S.W.2d 114, 118 (Tex. 1996).  
When the evidence offered to prove a vital fact is so weak as to do no more than create a mere surmise or suspicion of its existence, the evidence is no more than a scintilla and, in legal effect, is no evidence.  
Kindred v. Con/Chem, Inc.
, 650 S.W.2d 61, 63 (Tex. 1983).  More than a scintilla of evidence exists if the evidence furnishes some reasonable basis for differing conclusions by reasonable minds about the existence of a vital fact.  
Rocor Int’l, Inc. v. Nat’l Union Fire Ins. Co.
, 77 S.W.3d 253, 262 (Tex. 2002).

Any ultimate fact may be proved by circumstantial evidence.  
Russell v. Russell,
 865 S.W.2d 929, 933 (Tex. 1993).  A fact is established by circumstantial evidence when the fact may be fairly and reasonably inferred from other facts proved in the case.  
Id
.  However, to withstand a legal sufficiency challenge, circumstantial evidence still must consist of more than a scintilla.  
Blount v. Bordens, Inc.
, 910 S.W.2d 931, 933 (Tex. 1995).

Applicable Law

Chapter 59 of the Texas Code of Criminal Procedure prescribes the procedures governing civil forfeiture, which is an in rem proceeding against contraband.  
State v. Silver Chevrolet Pickup
, 140 S.W.3d 691, 692-93 (Tex. 2004); 
Hardy v. State
, 102 S.W.3d 123, 126-27 (Tex. 2003).  “Contraband” is defined as property of any nature that is used or intended to be used in the commission of, that constitutes proceeds of, or has been acquired with the proceeds of, certain enumerated felonies.  
Tex. Code Crim. Proc
. A
nn
. art. 59.01(2) (Vernon 2006); 
Silver Chevrolet Pickup
, 140 S.W.3d at 692-93.  Personal property that has been used in the commission of a felony in violation of chapter 481 of the Texas Health and Safety Code, the Texas Controlled Substance Act, is contraband subject to forfeiture.  
Tex. Code Crim. Proc. Ann.
 art. 59.01(2)(B)(i); 
Tex. Health & Safety Code Ann.
 §§ 481.001–.314 (Vernon 2003 & Supp. 2007);
 Real Prop. Located at 4125 Blanton, Wichita Falls v. State
, 230 S.W.3d 476, 481 (Tex. App.—Fort Worth 2007, pet. denied).  Methamphetamine is a controlled substance, and possession of it is a felony.
  Tex. Health & Safety Code Ann.
 §§ 481.102(6), 481.115;
 Real Property
, 230 S.W.3d at 481.

In a Chapter 59 forfeiture hearing, the trial court must first determine whether the property in question is, indeed, “contraband” as defined by statute.  
Tex. Code Crim. Proc. Ann
. arts. 59.01(2), 59.05 (Vernon 2006); 
One Car, 1996 Dodge X-Cab Truck v. State
, 122 S.W.3d 422, 424 (Tex. App.—Beaumont 2003, no pet.).  The State must establish, by a preponderance of the evidence, a substantial nexus or connection between the property to be forfeited and statutorily defined criminal activity.  
State v. $11,014
.
00
, 820 S.W.2d 783, 785 (Tex. 1991); 
Forty-Seven Thousand Two Hundred Dollars U.S. Currency, et al. v. State
, 883 S.W.2d 302, 306 (Tex. App.—El Paso 1994, writ denied); 
Spurs v. State
, 850 S.W.2d 611, 614 (Tex. App.—Tyler 1993, writ denied).  Thus, the State must prove, considering all the evidence, that it was more reasonably probable than not that the seized property was either intended for use in, or derived from, a violation of the offenses enumerated in the forfeiture statute.  
$9,050.00 in U.S. Currency v. State
, 874 S.W.2d 158, 161 (Tex. App.—Houston [14th Dist.] 1994, writ denied).  The State may prove this nexus through circumstantial evidence.  
$11,014.00
, 820 S.W.2d at 785.

Analysis

Here, the First Amended Notice of Seizure and Forfeiture filed by the State alleges that the Cadillac and Lincoln were used or intended to be used in the commission of a felony under chapter 481 of the health and safety code. In the alternative, the State alleged that the automobiles were either proceeds of, or acquired with proceeds of, a felony under chapter 481.  The trial court’s judgment states that the court found that the vehicles were used or intended to be used in the commission of a felony.  

The State concedes that there is no evidence that the Cadillac was used or intended to be used in the commission of a felony.  Instead, the State contends that the evidence is legally sufficient to prove that Heather acquired the Cadillac with proceeds from a chapter 481 felony.  The State points to (1) Heather’s possession of a dealer quantity of methamphetamine when she was found in the apartment, (2) her past history of possession and delivery of methamphetamine since 2004, and (3) Officer McElwee’s testimony that Heather told him she was not working full-time and that she had paid $5,000 cash for the car, as sufficient evidence that Heather bought the Cadillac with proceeds of a chapter 481 felony.

But this evidence creates no more than a mere surmise or suspicion.  It is unclear from the evidence when Heather purchased the Cadillac although it must have been sometime after March 2, 2005, because that is the date of the title application receipt for the prior owner.
(footnote: 4)  There is no evidence that Heather was unemployed or working part-time when she bought the car, nor is there any evidence as to how long she had not been working a full-time job at the time of Joas's arrest.   Additionally, there is no evidence of the extent of her involvement in any drug dealing at that time.  Even assuming that she was actively involved in dealing drugs when she purchased the Cadillac, the evidence is still too attenuated to conclude that she purchased the Cadillac with the proceeds of that drug dealing.  Accordingly, we conclude and hold that the evidence is legally insufficient to prove that the Cadillac was contraband for purposes of section 59.01(a)(2).

As to the Lincoln, however, there is some evidence that Joas had been driving the Lincoln and that drugs had come into contact with the driver’s side door.  This is a more substantial connection between the Lincoln and Joas, who was the object of the arrest warrants for possession of methamphetamine, a felony, and who, along with Heather, was found in the apartment in close proximity to a dealer quantity of methamphetamine.  
See
 
$11,014.00
, 820 S.W.2d at 784-85.  In addition, the Lincoln was registered to Heather with a lien in Joas’s name.  The evidence showed that the previous owner of the car was Baillargeon Preowned and that Heather had purchased the car for $18,950 just two months before police seized it.  Because Baillargeon did not have a lien, it is a reasonable inference that Heather and Joas, or Joas as the lienholder, paid for the Lincoln in full.  According to Officer McElwee, Joas was a suspect in an evading arrest case in which $80,000 cash had been found in a vehicle that Joas was suspected of driving, and Joas had never claimed that money.  We conclude and hold that it can be fairly and reasonably inferred from this circumstantial evidence that the Lincoln was obtained with proceeds from a chapter 481 felony; thus, we hold that the evidence is legally sufficient to support the trial court’s finding that the Lincoln was contraband.  
See $165,524.78 v. State
, 47 S.W.3d 632, 634, 636-37 (Tex. App.—Houston [14th Dist.] 2001, pet. denied), 
cert. denied
, 537 U.S. 974 (2002).

We overrule Heather’s sole point in part as to the Lincoln, but we sustain it in part as to the Cadillac.  Accordingly, we affirm the trial court’s judgment as to the Lincoln, but we reverse the judgment as to the Cadillac and render a judgment that the Cadillac is not subject to forfeiture by the State.  
See
 
Tex. R. App. P.
 43.2(c).

TERRIE LIVINGSTON

JUSTICE

PANEL B: LIVINGSTON, WALKER, and McCOY, JJ.

DELIVERED: January 17, 2008

FOOTNOTES
1:
See
 
Tex. R. App. P
. 47.4.

2:
The former owner of the Cadillac and the bank shown as the lienholder of record each filed a Waiver of Citation, Acceptance of Service and Disclaimer of Interest disclaiming any lien or other interest in the vehicle. 

3:
There is no evidence in the record as to how long Joas had been living at the apartment.

4:
The State admitted this receipt into evidence.